**Opinion issued August 29, 2014**



In The

# Court of Appeals

For The

# First District of Texas

—————————————

## NO. 01-12-00324-CR

—————————————

**CRISTOBAL GALVAN-CERNA, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 155th District Court**
**Austin County, Texas**
**Trial Court Case No. 2009R-0091**

# O P I N I O N

A jury found Cristobal Galvan-Cerna guilty of capital murder[1] and the trial

court assessed his punishment at life without parole. Appellant's first point of

---

[1] *See* TEX. PENAL CODE ANN. §§ 19.02(b)(1), 19.03(a)(2) (West 2012).

error contends that the evidence is insufficient to support the verdict. His second and third points maintain that the trial court erred in overruling his motion to suppress his custodial statement because the warnings given did not comply with Texas Code of Criminal Procedure article 38.22 and he did not waive his rights. We affirm.

## Background

On arrival at his Austin County ranch for a weekend visit with his wife and infant son, Dr. Jorge Mario Gonzalez, went inside the house ahead of his wife. As Charleen was walking towards the house, she saw a man dressed in black approach her from around the corner of the porch. She ran into the house screaming for Dr. Gonzalez to get his gun. As the doctor went to the bedroom closet to grab his gun, Charleen tried to hide in the bathroom and called 9-1-1. Charleen saw Dr. Gonzalez leave the bedroom and moments later heard several gunshots. Shortly afterward, someone tried to force open the bathroom door. She could see several men dressed in black and wearing black masks outside the bathroom window, but they eventually fled.

Bellville Police Department Officer Chris Rosales responded to Charleen's 9-1-1 call at approximately 12:10 p.m. At an intersection leading toward the Gonzalez ranch, Rosales saw a white truck and a burgundy car approaching him at

a high rate of speed, and as the vehicles sped through the intersection he heard a gunshot and saw a handgun extended out of the white truck's passenger-side window. Rosales attempted to pursue the truck but eventually lost sight of it and continued to the Gonzalez ranch. On arrival at the ranch, Rosales and other officers found the Gonzalez's son, Mario, next to Dr. Gonzalez's truck, and Noel Cerna, the Gonzalez's ranch hand (and appellant's brother), sitting in a chair holding his wounded arm. They also found the doctor, dead in the kitchen, shot four times.

Highway Patrol Sergeant Joseph Evans responded to the crime scene at 1:30 p.m. En route to the ranch, he drove behind two Hispanic males in a white truck matching the description of the truck that had passed Officer Rosales, and recorded the license plate. Learning later that the suspects fled in the same direction as the white truck, he gave the registration information to the Texas Rangers investigating Dr. Gonzalez's murder. Sergio Bustillo, Noel's mother's boyfriend, was the owner.

Crime scene experts later found six shell casings and four bullets at the scene. Two other bullets were recovered from Dr. Gonzalez's body during an autopsy. Ballistics tests revealed that the casings and bullets had been fired by a single weapon, a 9mm Baretta.

Investigators found foot tracks from near the house toward the back gate. The path revealed tire tracks near the back gate which led to a nearby area where they discovered masks, clothing, and duct tape on the ground. Later DNA testing of the items revealed a match to appellant's cousin, Misael Santollo (a sweatshirt, gloves, and a cap), and to appellant's brothers, Moises (a stocking cap) and Noel (a glove). The testing also revealed a DNA match with appellant (a glove and a cap).

Subsequent investigation revealed:

- At 6:03 a.m. on the morning of the murder, appellant, Moises, Noel, and Santollo were videotaped arriving at a West Houston Shell gas station in a red Honda Civic and a white Ford F-150 truck;

- At 6:45 a.m., toll road cameras recorded both vehicles traveling westbound toward Austin County;

- At 7:23 a.m., appellant, Moises, Noel, and Santollo were shown on video entering a McDonald's restaurant in Sealy where they remained for approximately twenty minutes before leaving;[2]

- At 9:00 a.m., the motion-activated security cameras on the exterior of the Gonzalez's ranch were moved and re-directed into a different position;

---

[2] The city of Sealy, located at the intersection of I-10 and State Highway 36, lies on the route from Houston to Bellville.

4

- At 9:52 a.m., Noel called Dr. Gonzalez; at 10:25 a.m., Noel called Santollo; at 10:30 a.m., Santollo called Noel back; at 10:30 a.m., Dr. Gonzalez called Noel shortly before picking Noel up; at 10:38 a.m., Noel sent a text message to Santollo to which Santollo responded moments later;

- At 10:40 a.m., highway toll records showed the red Honda (but not the Ford F-150) again passing through the westbound toll headed back toward Austin County;

- At 11:46 a.m., Noel sent another text message to Santollo shortly before the Gonzalezes arrived with Noel at the ranch;

- At 11:55 a.m.—moments before the Gonzalezes arrived at the ranch—the security camera was moved again and then detected several individuals approaching the house under a fence line at the back of the property;

- At 12:09 p.m., after Charleen's 9-1-1 call, the security camera detected three individuals running from the scene toward the back fence line; and

- Between 1:17 and 3:35 p.m., appellant attempted to reach Santollo on his cell phone twenty-three times.

Appellant was arrested during the late night hours of August 27, 2009, on an unrelated charge. Prior to being questioned, appellant was allowed soft drinks, restroom breaks, and food. Texas Ranger Noe Diaz advised appellant of his *Miranda* rights in Spanish. Appellant gave no indication of misunderstanding what he had been told nor did he attempt to invoke any of the rights Diaz had explained. Ranger Diaz and Department of Public Safety Lieutenant Rick Muniz then began questioning appellant.

During the videotaped interview, appellant conversed with the investigators in Spanish. Appellant admitted participating in the crime but stated that another person named "Pollo" was involved. He claimed that the plan was to commit a kidnapping and robbery by tying up and threatening Dr. Gonzalez's wife and child in order to coerce Dr. Gonzalez into withdrawing money from the bank. Appellant claimed that as they entered the property, "Pollo" went first, carrying a black gun. Appellant told police that the plan was for Santollo to go to the bank with Dr. Gonzalez and, "[i]f a mistake was made, we would do something bad to his wife or his child." Appellant told investigators that when things started to go wrong, "Pollo" and Dr. Gonzalez began shooting at one another. Appellant further told them that after the shooting "Pollo" picked up Dr. Gonzalez's gun, and that "Pollo," Moises, and appellant fled. After Ranger Diaz told appellant that he did

6

not believe "Pollo" existed, appellant began to interchange "Pollo" with "Santollo." The interview lasted less than two hours.

After the video-recorded interview, and while he was sitting in the hallway outside the interview room, appellant volunteered to take the investigators to the guns involved in the crime. Appellant then took them to the apartment of Santos Aviles, to whom appellant claimed he had given the guns. Aviles had Dr. Gonzalez's stolen gun and another gun in the trunk of his car. The second gun was a black Baretta later identified as the murder weapon.

## Discussion

In his first point of error, appellant contends that the evidence is insufficient to support the jury's verdict that he committed the offense of capital murder. In his second and third points of error, he argues that the trial court erred in overruling his motion to suppress his custodial statement because the warnings given did not comply with Texas Code of Criminal Procedure article 38.22 and he did not waive his rights.

## Sufficiency of the Evidence

### A. *Standard of Review*

We review evidentiary sufficiency challenges under the *Jackson v. Virginia* standard. *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under this standard, we review the evidence in the light most favorable to the

7

verdict, and ask whether any rational fact-finder could have found that each essential element of the charged offense was proven beyond a reasonable doubt. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Laster v. State*, 275 S.W.3d 512, 517 (Tex. Crim. App. 2009). The jury is the sole judge of the credibility of witnesses and the weight to give testimony, and our role on appeal is simply to ensure that the evidence reasonably supports the jury's verdict. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012); *see King v. State*, 29 S.W.3d 556, 562 (Tex. Crim. App. 2000) (noting appellate court may not re-evaluate weight and credibility of evidence produced at trial or otherwise substitute its judgment for that of trier of fact). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *See Canfield v. State*, 429 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd). Inconsistencies in the evidence are resolved in favor of the verdict. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

### B. Elements of Capital Murder

A person commits murder if he "intentionally or knowingly causes the death of an individual." TEX. PENAL CODE ANN. § 19.02(b)(1) (West 2011). A person commits capital murder if he intentionally commits murder in the course of committing or attempting to commit any of several offenses, including robbery,

8

kidnapping, or burglary. *Id.* § 19.03(a)(2). As alleged in the indictment, capital murder in the present case required proof that the principal actor intentionally caused Dr. Gonzalez's death while in the course of committing or attempting to commit burglary, robbery, or kidnapping.

In determining whether intent to kill was proven, the jury can use common sense and may apply common knowledge and experience. *See Rodriguez v. State*, 90 S.W.3d 340, 355 (Tex. App.—El Paso 2001, pet. ref'd). The jury may infer intent to kill from any evidence that it believes proves the existence of that intent. *Brown v. State*, 122 S.W.3d 794, 800 (Tex. Crim. App. 2003). A person's acts, words, and conduct are generally reliable circumstantial evidence of one's intent. *See Laster*, 275 S.W.3d at 524. The jury may also infer intent to kill from the use of a deadly weapon, unless it would be unreasonable to infer that death or seriously bodily injury could result from the particular use of the weapon. *See Brown*, 122 S.W.3d at 800–01.

Capital murder also requires proof that the murder was committed in the course of committing or attempting to commit burglary, robbery, or kidnapping. A person commits burglary "if, without the effective consent of the owner, the person: (1) enters a habitation . . . with intent to commit a felony, theft or assault; or . . . (3) enters a . . . habitation and commits or attempts to commit a felony, theft, or an assault." *See* TEX. PENAL CODE. ANN. § 30.02(a)(1), (3) (West 2011). Under

9

section 29.02, a person commits robbery "if, in the course of committing theft . . . and with intent to obtain or maintain control of the property, he . . . intentionally or knowingly threatens or places another in fear of imminent bodily injury or death." *Id.* § 29.02((a)(2) (West 2012). Under section 20.02, a person commits kidnapping "if he intentionally or knowingly abducts another person."[3] *Id.* § 20.02(a).

Here, the evidence establishes that Dr. Gonzalez was shot four times by bullets fired during a barrage of gunfire heard on the 9-1-1 recording and as evidenced by the casings and bullets recovered at the scene. A black Beretta was identified as the murder weapon. *See* TEX. PENAL CODE ANN. § 1.07(a)(17)(A) (West 2014) (characterizing firearm as deadly weapon per se). In light of the weapon used and the numerous times Dr. Gonzalez was shot, the evidence is sufficient to show an intent to cause Dr. Gonzalez's death.

The State also presented evidence that several masked intruders trespassed onto Dr. Gonzalez's private property, entered his home, and murdered him, and that his revolver was stolen. The unlawful entry into Dr. Gonzalez's home, followed by commission of a felony (i.e., Dr. Gonzalez's murder and theft of his

---

[3]     "'Abduct' means to restrain a person with intent to prevent his liberation by: . . . using or threatening to use deadly force." TEX. PENAL CODE ANN. § 20.01(2)(B) (West 2011).

10

gun),[4] constitutes a burglary. Appellant also admitted to his intent to tie up and hold Dr. Gonzalez's wife and child for ransom and to threaten them with harm in order to coerce Dr. Gonzalez to withdraw money from the bank. The unlawful entry into Dr. Gonzalez's home with the intent to commit a felony (i.e., kidnapping Dr. Gonzalez's wife and child) also constitutes a burglary. The evidence is legally sufficient to show that the murder was committed in the course of committing or attempting to commit burglary, robbery, or kidnapping.

## C. Party Liability

Here, the jury was authorized to find appellant guilty of capital murder in any one of the following three ways: (1) as a principal; (2) as a party under Texas Penal Code section 7.02(a)(2); and (3) as a co-conspirator under section 7.02(b). *See* TEX. PENAL CODE ANN. 7.02 (West 2011). When there are alternative means of proving an offense, the sufficiency of the evidence is established if sufficient evidence of any alternative exists. *See Alvarado v. State*, 912 S.W.2d 199, 225 (Tex. Crim. App. 1995). Moreover, we need not reach the question of whether the evidence was sufficient to support a second theory if the evidence is sufficient to support a finding of guilt under the first theory. *See Gibbs v. State*, 932 S.W.2d 256, 259 (Tex. App.—Texarkana 1996, no pet.). If the evidence is sufficient to

---

[4] Theft of a firearm, theft from a person, and theft from a corpse constitute state jail felonies. *See* TEX. PENAL CODE ANN. § 31.03(e)(4)(B), (C) (West 2011).

support a guilty finding under any of these theories, we must uphold the jury's guilty verdict. *See Sorto v. State*, 173 S.W.3d 469, 472 (Tex. Crim. App. 2005).

"A person is criminally responsible as a party to an offense if the offense is committed by his own conduct, by the conduct of another for which he is criminally responsible, or by both." TEX. PENAL CODE ANN. § 7.01(a) (West 2011). Subsection (c) provides that "each party to an offense may be charged and convicted without alleging that he acted as a principal or accomplice." *Id.* § 7.01(c). "A person is criminally responsible for an offense committed by the conduct of another if: . . . (2) acting with intent to promote or assist the commission of the offense, he solicits, encourages, directs, aids, or attempts to aid the other person to commit the offense . . . ." *Id.* § 7.02(a)(2).

In addition to being criminally responsible as a party under section 7.02(a), a person may be criminally responsible for the conduct of another

> [i]f, in the attempt to carry out a conspiracy to commit one felony, another felony is committed by one of the conspirators, all conspirators are guilty of the felony actually committed, though having no intent to commit it, if the offense was committed in furtherance of the unlawful purpose and was one that should have been anticipated as a result of the carrying out of the conspiracy.

TEX. PENAL CODE ANN. § 7.02(b) (West 2011). Thus, section 7.02(b) obviates the need for the State prove the defendant intended to kill the victim as long as the evidence establishes that a felony was committed as a result of the conspiracy and the murder should have been anticipated in carrying out the conspiracy to commit

12

the underlying felony. *See Wood v. State*, 4 S.W.3d 85, 89 (Tex. App.—Fort Worth 1999, pet. ref'd).

In determining whether the accused participated as a party, the trial court "may look to events occurring before, during and after the commission of the offense, and may rely on actions of the defendant which show an understanding and common design to do the prohibited act." *Cordova v. State*, 698 S.W.2d 107, 111 (Tex. Crim. App. 1985). Post-offense conduct, although relevant, cannot stand alone to demonstrate an agreement. *Gross v. State*, 380 S.W.3d 181, 188 (Tex. Crim. App. 2012). A reviewing court may rely on circumstantial evidence to prove party status. *Id.* at 186. Although "[e]ach fact need not point directly and independently to the guilt of the appellant," the cumulative effect of the incriminating facts must be sufficient to support the conviction. *Guevara v. State*, 152 S.W.3d 45, 49 (Tex. Crim. App. 2004).

### D. Analysis

In his first point of error, appellant contends that the evidence is insufficient to support his conviction for capital murder. Specifically, he argues that the evidence is insufficient to convict him as a party under section 7.02(b) because the State failed to prove that he should have anticipated that a murder would occur as a result of the carrying out of the conspiracy.

13

Appellant contends that the original plan in which he agreed to participate—holding Dr. Gonzalez's pregnant wife and child hostage to coerce Dr. Gonzalez into withdrawing money from the bank—demonstrates that he did not and could not have anticipated that murder would result. This is so, he argues, because he and the other conspirators could never get the money if Dr. Gonzalez was killed. Appellant asserts that "[o]ne cannot anticipate an outcome that is completely contradictory to the intended[ed] purpose of the conspiracy." Appellant, however, misconstrues section 7.02(b). Section 7.02(b) does not require that the defendant actually have anticipated the crime—rather, a defendant is liable if the offense "was one that *should have been* anticipated." *See* TEX. PENAL CODE ANN. § 7.02(b) (emphasis added).

In support of his argument, appellant also relies on *Tippitt v. State*, 41 S.W.3d 316, 319–20 (Tex. App.—Fort Worth 2001, no pet.), *overruled on other grounds by Hooper v. State*, 214 S.W.3d 9, 15 (Tex. Crim. App. 2007). In *Tippitt*, the defendant and a man named Whitaker planned to rob a known drug dealer. *See id*. at 319. During the course of the robbery, Whitaker pulled out a gun and killed the dealer. *See id.* at 320. The defendant was convicted of capital murder under the theory of parties' liability. *See id.* at 319. On appeal, the defendant argued that the evidence was legally insufficient to support his conviction. *See id.*

14

The court of appeals held that the evidence was legally insufficient to support a finding of criminal responsibility under either section 7.02(a)(2) (as a party) or 7.02(b) (as a co-conspirator). *See id.* at 324. With regard to section 7.02(b), the court found that although the evidence established that the murder was committed in furtherance of the robbery, the evidence failed to support a finding that murder was an offense that the defendant should have anticipated as a result of carrying out the robbery. *See id.* In particular, the court found that although there was some evidence that Whitaker, by his reputation, might have been prone to violence, there was no evidence to establish the defendant's knowledge of Whitaker's violent propensities. *See id.* at 325–26. The court also noted that there was no evidence to show that the defendant knew Whitaker had a gun when he entered the victim's home. *See id.* The court concluded that without such evidence, it could not hold that the evidence showed beyond a reasonable doubt that the defendant should have anticipated intentional murder as a possible result of their agreement to rob the victim. *See id.* at 326.

Relying on *Tippitt*, appellant contends that there is no basis to conclude that he should have anticipated Dr. Gonzalez's murder. He argues that, just as in *Tippitt*, appellant merely had an agreement with his co-conspirators to kidnap and rob the Gonzalez family, there was no intent to murder anyone, and appellant's presence when the murder occurred does not establish that he should have

15

anticipated its occurrence. *Tippitt*, however, is distinguishable from the facts in this case. Here, appellant admitted to investigators that he knew that one of the co-conspirators had a gun at the time they entered the Gonzalez property. Appellant also described a plan that required the perpetrators to be able to convince Dr. Gonzalez that they could carry out a threat to harm his wife and child. In short, the perpetrators' plan to wait in ambush for Dr. Gonzalez and his family, invade their home, and threaten harm Dr. Gonzalez's pregnant wife and child in an attempt to extort money from him evidences a plan fraught with risks of violence. Further, appellant's contention that there was no intention to murder anyone is irrelevant for purposes of section 7.02(b), which specifically confers responsibility on all conspirators to a crime committed "*though having no intent to commit it . . . .*" TEX. PENAL CODE ANN. § 7.02(b) (emphasis added).

Viewing the evidence in the light most favorable to the verdict, we conclude that the evidence is legally sufficient to support a finding that appellant should have anticipated murder as a possible consequence of the planned kidnapping and robbery. *See id.* Because the evidence is legally sufficient to support a finding of criminal responsibility as a co-conspirator under section 7.02(b), we need not reach the question of whether the evidence was also sufficient to support a finding of guilty under the State's alternative theory under section 7.02(a)(2). *See Gibbs*, 932 S.W.2d at 259. Appellant's first point of error is overruled.

16

**Motion to Suppress**

In his second point of error, appellant contends that the trial court erred in overruling his motion to suppress his custodial statement because the warnings given did not comply with Texas Code of Criminal Procedure article 38.22. In his third point of error, he argues that the trial court should have suppressed his recorded statements because he did not voluntarily waive his rights.

### A. Standard of Review

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review. *Valtierra v. State*, 310 S.W.3d 442, 447 (Tex. Crim. App. 2010). We afford almost total deference to a trial court's determination of historical facts. *Id.* The trial court is the sole trier of fact and judge of the credibility of the witnesses and the weight to be given their testimony. *Id.* Additionally, given this vital role, we accord great deference to the trial court's decision to admit or exclude such evidence, which will be overturned on appeal only where an abuse of discretion is shown. *See id.* When a trial court makes written findings of fact, as it did in the instant case, a reviewing court must examine the record in the light most favorable to the ruling and uphold those fact findings so long as they are supported by the record. *See id.*

### B. Article 38.22 Warnings

#### 1. Applicable Law

An oral statement of an accused made as a result of custodial interrogation is admissible against the accused in a criminal proceeding if: (1) an electronic recording, which includes a videotape, is made of the statement; (2) before the statement, but during the recording, the accused is given the warnings required by article 38. 22; and (3) the accused knowingly, intelligently, and voluntarily waives the rights conveyed by the warning. TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a) (West 2014). Under article 38.22(a)(2), a custodial statement is inadmissible unless the accused is first warned that:

> (1) he has the right to remain silent and not make any statement at all and that any statement he makes may be used against him at his trial;
>
> (2) any statement he makes may be used as evidence against him in court;
>
> (3) he has the right to have a lawyer present to advise him prior to and during any questioning;
>
> (4) if he is unable to employ a lawyer, he has the right to have a lawyer appointed to advise him prior to and during any questioning; and
>
> (5) he has the right to terminate the interview at any time.

TEX. CODE CRIM. PROC. ANN. art. 38.22, § 3(a)(2).

### 2. *Analysis*

Prior to trial, the court held a hearing on appellant's motion to suppress his custodial statement. Appellant argued, among other grounds, that his custodial

18

statement should be suppressed because of the alleged inadequacy of the warnings provided to him in Spanish by Ranger Diaz during his videotaped interview. A translated transcript of the interview was admitted at the hearing.[5] Dr. Berk-Seligson, a linguistic expert, testified on behalf of the defense at the hearing and orally translated into English the warnings given to appellant by Ranger Diaz. At the conclusion of the hearing, the trial court overruled appellant's motion to suppress his confession. In its order denying the motion, which included the court's findings of fact and conclusions of law, the trial court found that

> Prior to giving the statement, but during the recording warnings were provided to the Defendant in Spanish, a language spoken by the defendant, and that the language of the warnings used was the fully effective equivalent and conveyed the same meaning as all those warnings required by the Constitution and laws of the United States of America and the State of Texas, including the warnings contained in art. 38.22, §2(a), Texas Code of Criminal procedure.

At trial, the State introduced the court interpreter's Spanish-to-English translation of the recorded warnings:

> Ok. You have the right to remain silent, and to say absolutely nothing. Any statement you make may be used against you, in the case counseled against you, charged or brought against you, sorry. Any statement made by you may be used against you in court. You have the right to have an attorney present with you so that you are counseled before being questioned, and while you are being questioned If you cannot have an attorney, you have the right to have an attorney assigned for him, for him to counsel you before you doubt of the time that you are questioned.

---

[5] A reporter's note reflects that all of the exhibits admitted at the hearing on appellant's motion to suppress were sealed.

19

Appellant contends that the warnings given to him by Ranger Diaz in Spanish are not the "fully functional equivalent" of the warnings set out in article 38.22, §3(a)(2). *See* TEX. CRIM. APP. PROC. ANN. Art. 38.22, §3(e)(2) (requiring that statutory warnings be given exactly as listed or their "fully functional equivalent"). This is so, he argues, because "Dr. Berk-Seligson provided the court with a translation of the actual warnings given to [appellant], some of which, when translated, were nonsensical."

We find appellant's contention unpersuasive for two reasons. First, appellant's argument that Ranger Diaz's words were not the "fully functional equivalent" of the warnings under article 38.22 because several of the warnings were nonsensical as evidenced by Dr. Berk-Selingson's translation requires us to accept a translation other than the court interpreter's translation admitted at the suppression hearing and at trial.[6] Second, questions regarding inaccuracies in a translation are issues of fact to be settled by the trier of fact. *See Garcia v. State*, 887 S.W.2d 862, 875 (Tex. Crim. App. 1994), *overruled on other grounds by Hammock v. State*, 46 S.W.3d 889, 893 (Tex. Crim. App. 2001); *Calixto v. State*, 66 S.W.3d 505, 510 (Tex. App.—Austin 2001, pet. ref'd). In *Garcia*, the Court of

---

[6] In footnote 2 of his brief, appellant notes that the English translation of his statement admitted at the suppression hearing as D-1 was also admitted before the jury as State's Exhibit 120. In so noting, we understand appellant to say that the two exhibits are effectively the same. At trial, the State also noted that the differences between Exhibit D-1 at the hearing and trial Exhibit 120 are "de minimis." \

20

Criminal Appeals held that a defendant must settle the question of a translation's accuracy at trial by impeaching the translation, either by cross-examination or other means:

> We, as an appellate court, can no more determine whether a translation is accurate or which of two translations is more accurate, than we can determine which of two witnesses is telling the truth, or which of the two is more truthful; these are questions for the factfinder. . . . Similarly, just as [a defendant] may not preserve error by objecting at trial that a witness is lying, he may not preserve error objecting that a translation is inaccurate; there is simply no reviewable question to preserve. Just as he must impeach the lying witness at trial to cure the lie, a defendant must impeach the inaccurate or incomplete translation to cure it. As a question of fact, [a defendant] must settle the question of a translation's accuracy at trial by impeaching the translation; cross-examination of the witness presents the most convenient vehicle, but impeachment may be accomplished by many other means.

887 S.W.2d at 875. Here, appellant does not attempt to argue that the warnings as translated by the court interpreter and admitted at trial were inadequate. Moreover, appellant offered no evidence at trial to support a finding that the warnings appellant received were other than those reflected in the translation admitted at trial.

Viewing the record in the light most favorable to the trial court's ruling, we conclude that the court did not err in overruling his motion to suppress his custodial statement because the warnings given complied with Texas Code of Criminal Procedure article 38.22. We overrule appellant's second point of error.

21

## C. *Waiver of Rights*

In his third point of error, appellant contends that the trial court erred in overruling his motion to suppress his custodial statement because he did not waive his rights.

### 1. *Applicable Law*

The State bears the burden to prove, by a preponderance of the evidence, that a defendant knowingly, intelligently, and voluntarily waived his *Miranda* rights. *See Robinson* v. *State*, 851 S.W.2d 216, 223 (Tex. Crim. App. 1991). Article 38.22 does not require an express waiver and it is within a trial court's discretion to rely upon an implied waiver whenever the totality of the circumstances, as reflected by the recording of the oral statement, warrants it. *Leza v. State*, 351 S.W.3d 344, 353 (Tex. Crim. App. 2011); *Joseph v. State*, 309 S.W.3d 20, 25 (Tex. Crim. App. 2010) (noting that "[T]he question is not whether [the defendant] 'explicitly' waived his *Miranda* rights, but whether he did so knowingly, intelligently, and voluntarily.").

This question is answered in two parts: "First, the relinquishment of the right must have been voluntary in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception." *Id.* at 25. "Second, the waiver must have been made with full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it." *Id.*

22

"[I]f the 'totality of the circumstances' surrounding the interrogation reveals both an uncoerced choice and the requisite level of comprehension . . . a court [may] properly conclude that the *Miranda* rights have been waived." *Id.* (citation omitted).

### 2. *Analysis*

In its findings of fact and conclusions of law, the trial court stated:

> The Court further finds from the totality of the circumstances surrounding the making of this statement, that the Defendant, at the time of making the statement, understood the rights and warnings of which he had been advised, and that the Defendant knowingly, intelligently, and voluntarily waived the rights set out in the warnings. The totality of the circumstances includes, but is not limited to: the Defendant's apparent intelligence; his ability to articulate his thoughts (be they truthful or perjurious) in response to questions; his conduct before, during, and after the videotaped interrogation; the information within the knowledge of the Defendant about the nature of the crime and the investigation thereof; the knowledge on the part of the Defendant of his rights, including the right to continue or discontinue the interview with law enforcement officials; and the method of interrogation used by the officers, including duration, location and comforts for the Defendant, and the technique of questioning. The Court further finds that the Defendant was not threatened or coerced into making the statement, nor promised anything in exchange for making the statement, and that the Defendant's statement was the product of a free and deliberate choice by the Defendant to waive his rights and speak with the officers questioning him.

Appellant contends that he did not waive his rights because he was not explicitly asked if he understood the warnings given to him and whether he waived his rights. He further argues that the fact that he was handcuffed and waiting approximately four hours before the interview began at 4:00 a.m. also

23

demonstrates that he did not waive his rights knowingly, intelligently, and voluntarily.

At the suppression hearing, Ranger Diaz testified that appellant gave no indication of misunderstanding what he was being told and made no attempt to invoke any of the rights Diaz had explained. He further testified that he and appellant had no difficulty understanding one another in Spanish, conversing freely and answering questions responsively. *See Joseph*, 309 S.W.3d at 26–27 (noting defendant's willingness to talk with investigators can demonstrate knowing, intelligent, and voluntary waiver of *Miranda* rights). The record reflects that, prior to the interview, appellant was allowed soft drinks, restroom breaks, and food, and that the interview lasted less than two hours. *See Smith v. State*, 779 S.W.2d 417, 429 (Tex. Crim. App. 1989) (concluding eight hours of questioning without food did not render confession involuntary in light of defendant's willingness to continue); *Fineron v. State*, 201 S.W.3d 361, 366 (Tex. App.—El Paso 2006, no pet.) (holding seven hours in custody did not render statement involuntary). After the recorded interview and while he was in the hallway, appellant, without any prompting, offered to take the police to the guns.

The trial court is the "sole and exclusive trier of fact and judge of the credibility of the witnesses" and the evidence presented at a hearing on a motion to suppress, particularly where the motion is based on the voluntariness of a

24

confession. *Delao*, 235 S.W.3d at 238. Based on the totality of the circumstances, we conclude that the preponderance of the evidence supports the trial court's conclusion that appellant knowingly, voluntarily, and intelligently waived his rights before giving his custodial statement. As such, the trial court did not abuse its discretion in finding appellant's statement admissible under article 38.22. We overrule appellant's third point of error.

## Conclusion

We affirm the trial court's judgment.


Jim Sharp

Justice

Panel consists of Justices Keyes, Sharp, and Huddle.

Publish. TEX. R. APP. P. 47.2(b).