**Opinion issued March 21, 2024**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

**NO. 01-22-00912-CR**

_____

**JUSTIN SCOTT PATRICK, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 337th District Court**
**Harris County, Texas**
**Trial Court Case No. 1720177**

---

**MEMORANDUM OPINION**

A jury found appellant Justin Scott Patrick guilty of the felony offense of continuous sexual abuse of a child, and the trial court assessed his punishment at fifty years' confinement. In one issue, appellant contends that the evidence is legally insufficient to find beyond a reasonable doubt that he committed two or more acts

of sexual abuse as alleged in the indictment, namely aggravated sexual assault of a child, during a period that is thirty or more days in duration. We affirm.

## Background

In June 2021, appellant was charged by indictment with continuous sexual abuse of a child. The indictment read, in relevant part:

> In Harris County, Texas, JUSTIN SCOTT PATRICK, HEREAFTER STYLED THE Defendant, heretofore on or about February 3, 2018 and continuing through February 28, 2020, did then and there unlawfully, during a period of time of thirty days or more in duration, commit at least two acts of sexual abuse against a child younger than fourteen years of age, including an act constituting the offense of Aggravated Sexual Assault of a Child, committed against A.M. on or about February 3, 2018, and an act constituting the offense of aggravated sexual assault of a child, committed against A.M. on or about February 28, 2020, and the Defendant was at least seventeen years of age at the time of the commission of each of those acts.

Appellant pleaded not guilty to the charged offense, and the case proceeded to trial.

T.F. began dating appellant on December 31, 2008. T.F. had a three-year old daughter, A.M., from a prior relationship. T.F. and appellant's son, W.P., was born in October 2009. T.F. and appellant lived together until February 28, 2020.

T.F. stayed home with the children until appellant sustained an on-the-job injury in 2016. At that time, A.M. was ten or eleven years old, and W.P. was six or seven years old. T.F. testified that appellant stopped working due to his injury, and he was eventually laid off and remained unemployed for some time. To support the family, T.F. began working a part-time overnight shift at a hotel while she continued

2

going to school during the day. T.F. testified that appellant helped a little around the house but mainly stayed "laid up" due to his injury, playing video games and watching television. Appellant was taking painkillers due to his knee injury.

After six months, T.F. began working full-time in the hotel industry. T.F. testified that appellant was usually at home with the children. She testified that the children did a lot of chores to help around the house, and that A.M. was responsible for doing the laundry and responding to appellant's "come here" requests, which ranged from getting him something to drink to bringing him a tool from the garage.

A.M.'s behavior began to change in 2016. T.F. testified that A.M. "shut down," and she stopped talking to T.F., cleaning her room, taking baths and showers, and brushing her hair. T.F. testified that A.M. would do anything not to leave her room, and that she avoided interacting with everyone. T.F. testified that appellant became angry if A.M. called her mother into her room to talk with her. On these occasions, appellant would come to A.M.'s room and ask, "why can't you talk to me?" T.F. testified that she and appellant had verbal fights frequently during this time.

In February 2018, appellant, T.F., and the children went to Coushatta Casino Resort in Louisiana to celebrate T.F.'s birthday. A.M. was twelve years old at the time. When W.F. began having trouble breathing due to his asthma, they left the

resort early one morning to return home. T.F. dropped appellant and A.M. off at the house and took W.P. to the hospital to receive breathing treatments.

T.F. testified that her relationship with appellant had become very toxic and that their fights had become more aggressive and she began to feel threatened. On February 28, 2020, T.F. and the children left the home she shared with appellant. T.F.'s mother, sister, and appellant's mother and stepfather helped her move out of the house while appellant was not home. A.M. was fourteen years old at the time.

On February 28, 2021, exactly one year after T.F. had left appellant, A.M. disclosed to T.F. that appellant had sexually abused her. T.F. testified that A.M. was shaking, crying, and hyperventilating when she made the disclosure. T.F. and A.M. picked up W.P. from appellant, and T.F. contacted the Deer Park Police Department to report A.M.'s disclosure. Shortly thereafter, Child Protective Services (CPS) and the police began their investigations.

Detective J. Reed with the Deer Park Police Department was assigned to investigate the case on March 1, 2021. He testified that appellant was thirty-six or thirty-seven years old when he interviewed him. Detective Reed obtained A.M.'s school records which reflected a very limited disciplinary history and mainly good grades. Detective Reed testified that T.F. told him that the sexual abuse began on or around February 3, 2018, when they returned from their trip to the Coushatta Resort in Louisiana. Detective Reed interviewed appellant who confirmed that he watched

A.M. on February 3, 2018, and that he was alone with her on numerous occasions. Appellant's employment records confirmed that appellant did not work on February 3, 2018.

A.M. testified that she was twelve years old when appellant, her stepdad, first touched her inappropriately. The family had just returned from Louisiana so that her mother could take A.M.'s brother, who was sick, to the doctor, while A.M stayed home with appellant. A.M. testified that she asked appellant to bring her shampoo while she was in the shower, and that after appellant brought it to her, he stood outside the shower for five to ten minutes. After A.M. got out of the shower and wrapped herself in a towel, appellant told her to lay down next to him on his bed where he began touching her vagina over her towel. After ten minutes, he told her to get dressed because her mother was on her way home. A.M. testified that she did not tell her mother what had happened because every time she would try and talk to her appellant would come into the room. A.M. testified that appellant touched her vagina again on another day while her mother was at work.

On another occasion, A.M. was watching television with appellant while her mother was at work and her brother was in his room. Appellant turned the television off, got on top of A.M., pulled her shorts down, and put his mouth on her vagina. A.M. testified that she was uncomfortable and tried to mentally block what was happening to her. When asked what other memories she had, A.M. testified that

"[a]fter that, it was just pretty repetitive." When asked "how often would this happen," A.M. responded ""[e]very day or every other day," and that it happened more than fifteen times and occurred over a period of more than thirty days in duration. On another occasion, A.M., her brother, T.F., and appellant were watching a movie in bed when appellant began touching her vagina underneath the blanket. A.M. also testified that when she was on the couch in the living room, appellant put his penis in her mouth. A.M. testified that she told her mother that appellant had touched her inappropriately one year after she, her mother, and her brother had moved out of the house they shared with appellant.

Sharon Record, a certified pediatric sexual assault nurse examiner (SANE), took A.M.'s medical history and examined her on March 9, 2021. The referral report stated that "[A.M.] disclosed to her mother that between late 2017 and February of 2020, mother's ex-boyfriend would touch and kiss all over her body after her shower and he would have her perform oral sex on him and masturbate him." Record testified that A.M. told her that appellant touched her vagina with his hands and his penis and touched her breasts with his hands, both over and under clothes. When Record asked her how many times that happened, A.M. replied, "almost daily between 2018 and 2020." A.M. told Record that the first time occurred when she was twelve years old and the last time occurred when she was fourteen years old. A.M. told Record that appellant also made her "suck his private part and touch it."

6

When Record asked A.M. how many times that happened, A.M. replied, "[n]ot as frequently as everything else but maybe once weekly he made me do things to him."

After both sides rested, the jury found appellant guilty of the first-degree felony offense of continuous sexual abuse of a child. Following the punishment hearing, the trial court sentenced appellant to fifty years' confinement. This appeal followed.

## Sufficiency of the Evidence

In one issue, appellant contends that the evidence is legally insufficient to find beyond a reasonable doubt that he committed two or more acts of sexual abuse as alleged in the indictment, namely aggravated sexual assault of a child, during a period of more than thirty days in duration.

## A.    Standard of Review

We review appellant's challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under that standard, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 319. Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence

probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *See Jackson*, 443 U.S. at 314, 318 n.11, 320; *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *Mottin v. State*, 634 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd).

The jury is the sole judge of the credibility of witnesses and the weight to give their testimony, and our role on appeal is simply to ensure that the evidence presented supports the jury's verdict. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all the evidence or testimony proffered, and weigh the evidence as it sees fit. *Galvan-Cerna v. State*, 509 S.W.3d 398, 403 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Canfield v. State*, 429 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd)). Inconsistencies in the evidence are resolved in favor of the verdict. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

"Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction." *Nisbett v. State*,

8

552 S.W.3d 244, 262 (Tex. Crim. App. 2018). "On appeal, the same standard of review is used for both circumstantial and direct evidence cases." *Hooper*, 214 S.W.3d at 13.

## B.    Applicable Law

Penal Code Section 21.02(b) provides that a person seventeen years of age or older commits the offense of continuous sexual abuse of a child if, during a period of time thirty or more days in duration, the person commits two or more acts of sexual abuse against a child younger than fourteen years of age. *See* TEX. PENAL CODE § 21.02(b)(1), (2). An "act of sexual abuse" can be an act of aggravated sexual assault or an act of indecency with a child, among others. *See id.* § 21.02(c)(2), (4); *see also id.* § 22.021(a)(1)(B) (enumerating acts that constitute offense of aggravated sexual assault, including causing penetration of child's mouth by actor's sexual organ and causing child's sexual organ, anus, or mouth to contact or penetrate mouth, anus, or sexual organ of another person), § 21.11(a)(1) (defining indecency of child as engaging in sexual contact with child or causing child to engage in sexual contact). The State need not prove the exact dates of the abuse, only that "there were two or more acts of sexual abuse that occurred during a period that was thirty or more days in duration." *Buxton v. State*, 526 S.W.3d 666, 676 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd); *Lane v. State*, 357 S.W.3d 770, 773–74 (Tex. App.—Houston [14th Dist.] 2011, pet. ref'd) (stating that factfinder is not required to agree

on exact dates that acts of sexual abuse were committed). Further, the jury need not be unanimous about which two acts of sexual abuse constituted the crime so long as they are unanimous that two acts occurred. *See* TEX. PENAL CODE § 21.02(d).

The uncorroborated testimony of a child victim is alone sufficient to support a conviction for sexual assault of a child. TEX. CODE CRIM. PROC. art. 38.07(a); *Gonzalez v. State*, 522 S.W.3d 48, 57 (Tex. App.—Houston [1st Dist.] 2017, no pet.). The State has no burden to produce any corroborating or physical evidence. *Martines v. State*, 371 S.W.3d 232, 240 (Tex. App.—Houston [1st Dist.] 2011, no pet.); *see also Lee v. State*, 176 S.W.3d 452, 458 (Tex. App.—Houston [1st Dist.] 2004), *aff'd*, 206 S.W.3d 620 (Tex. Crim. App. 2006) ("The lack of physical or forensic evidence is a factor for the jury to consider in weighing the evidence.").

## C. Analysis

Appellant contends that the evidence is insufficient to support his conviction for continuous sexual abuse of a child because the State failed to establish that the multiple instances of sexual abuse as alleged in the indictment, specifically aggravated sexual assault of a child, occurred over a span of thirty or more days in duration. He argues that, given the state of the evidence, the jury could have only speculated about when the acts of aggravated sexual assault would have occurred and if the acts of sexual abuse occurred during a period that was thirty or more days in duration. The State responds that it was not bound by the indictment to prove only

acts of aggravated sexual assault of a child. It argues that because the indictment states that appellant committed two acts of sexual abuse, and A.M. testified to multiple acts of sexual abuse over a period of two years, the evidence is sufficient to support appellant's conviction.

The indictment reads, in relevant part, that appellant

on or about February 3, 2018 and continuing through February 28, 2020, did then and there unlawfully, during a period of time of thirty days or more in duration, commit at least two acts of sexual abuse against a child younger than fourteen years of age, including an act constituting the offense of Aggravated Sexual Assault of a Child, committed against A.M. on or about February 3, 2018, and an act constituting the offense of aggravated sexual assault of a child, committed against A.M. on or about February 28, 2020.

The indictment alleges that appellant committed at least two acts of sexual abuse, *including* an act constituting the offense of aggravated sexual assault.

A.M. testified that she was twelve years old when appellant first touched her vagina over a towel after she had showered. This act constitutes indecency with a child by contact. *See* TEX. PENAL CODE § 21.11(c)(1) (defining "sexual contact" to include touching by person, including touching through clothing, of any part of genitals of child, "if committed with the intent to arouse or gratify the sexual desire of any person"). A.M. testified that appellant touched her vagina again on another occasion. She also described an occasion when appellant placed his mouth on her vagina and another instance when appellant put his penis in her mouth. *See* § 22.021(a)(1)(B) (enumerating acts that constitute offense of aggravated sexual

11

assault, including causing penetration of child's mouth by actor's sexual organ and causing child's sexual organ to contact mouth of another person). A.M. testified that appellant abused her more than fifteen times and that the abuse spanned more than thirty days. Record, the SANE examiner, testified that A.M. reported that appellant touched her inappropriately "almost daily between 2018 and 2020," and that he made her perform oral sex on him "maybe once weekly." Record stated that A.M. told her that the first time occurred when she was twelve years old, and the last time occurred when she was fourteen years old. Although A.M. used the words "almost" and "maybe" to describe the frequency of appellant's abuse, a rational jury could have inferred from the evidence presented that appellant committed more than two acts of sexual abuse for a duration of more than thirty days. *See Witcher v. State*, 638 S.W.3d 707, 709–10 (Tex. Crim. App. 2022) (concluding that testimony about dates, despite being described as "give or take" and "around," provided legally sufficient evidence to support conviction for continuous sexual abuse of a child); *Turner v. State*, 573 S.W.3d 455, 461 (Tex. App.—Amarillo 2019, no pet.) (overruling sufficiency challenge where evidence supported reasonable inference that appellant committed two or more acts of sexual abuse over period of thirty days or more); *Lane*, 357 S.W.3d at 774 (relying on testimony that abuse occurred in "fall" and evidence showing hotel stays where abuse also occurred in late January and early February to show that incidents occurred thirty or more days apart); *Smith v. State*,

340 S.W.3d 41, 48 (Tex. App.—Houston [1st Dist.] 2011, no pet.) (accepting September 22 as last day of summer 2007 for purposes of computing thirty-day or more period where complainant described abuse as beginning during "the summer" of that year); *see also Garrett v. State*, No. 14-22-00328-CR, 2023 WL 5111102, at *4 (Tex. App.—Houston [14th Dist.] Aug. 10, 2023, pet. ref'd) (noting that although complainant was vague about exact dates that sexual assaults occurred, courts "give wide latitude to the testimony of child sexual abuse victims," and "a child victim's description of what happened and when it occurred need not be expressed with the same level of sophistication and detail that an adult might use") (quoting *Turner*, 573 S.W.3d at 459). Further, A.M.'s testimony, standing alone, is sufficient to support appellant's conviction. *See* TEX. CODE CRIM. PROC. art. 38.07(a); *Gonzalez*, 522 S.W.3d at 57.

Viewing the evidence in the light most favorable to the jury's verdict, the jury reasonably could infer that appellant sexually assaulted A.M. during the incident that occurred in the beginning of February 2018 and that more than two instances of sexual abuse against A.M. occurred while she was between the ages of twelve and fourteen that took place during a period of thirty days or more in duration. We therefore hold that a rational jury could have found all the elements of this offense beyond a reasonable doubt. We overrule appellant's issue.

## Conclusion

We affirm the trial court's judgment.

Amparo Monique Guerra
Justice

Panel consists of Justices Kelly, Hightower, and Guerra.

Do not publish. TEX. R. APP. P. 47.2(b).