**Opinion issued January 30, 2025**



In The

# Court of Appeals

For The

# First District of Texas

———————————

## NO. 01-23-00521-CR

———————————

**JITERION KEGLER, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from 178th District Court**
**Harris County, Texas**
**Trial Court Case No. 1629898**

---

## MEMORANDUM OPINION

A jury found appellant Jiterion Kegler guilty of the felony offense of murder and assessed his punishment at forty years' confinement. In one point of error, appellant challenges the sufficiency of the evidence to support his conviction. We affirm.

## Background

In July 2019, a grand jury indicted appellant for the murder of Michael Ubani. Appellant pleaded not guilty to the charged offense, and the case was tried to a jury. Several witnesses testified for the State at trial, including Eric Connerly, Houston Police Department (HPD) Sergeant J. Chavez-Resendiz, Angelica Hernandez, HPD Officer D. Laos, Kurt Gumberger, HPD Officer D. Combs, Anushka Reyes, HPD Detective K. Persad, Marianne Beynon, and Nicole Wilson.

### 1. Eric Connerly

On April 29, 2019, Connerly was talking with someone outside the Kroger grocery store on Westheimer Street in the Montrose neighborhood. During the conversation, he saw a small, dark, older model car pull into the Kroger parking lot with three people inside. Connerly testified that a male got out of the rear passenger side of the car and approached the driver-side door of a parked taxicab. He described the male as approximately 5'11" tall, with a slim build and an Afro hairstyle, and wearing a dark blue shirt and dark pants. Connerly testified that he then heard two gunshots and fled. He later returned to the scene where police took his statement.

### 2. Sergeant J. Chavez-Resendiz

HPD Sergeant Chavez-Resendiz was on patrol across the street from the Kroger store when he heard gunshots. When he arrived at the scene, he saw several people gathered around a yellow taxicab and a man slumped over in the cab.

After securing the scene, Sergeant Chavez-Resendiz spoke with several witnesses and watched the surveillance video obtained from the Kroger. One of the witnesses told him that the shooter was in a black, four-door car and provided him with the car's license plate number. Another witness stated that there were two black males and one white female in the car. The Kroger surveillance video, which was admitted into evidence, showed a male approach the taxicab with a firearm and shoot through the driver's side window. Sergeant Chavez-Resendiz testified that the car was later found about five to six blocks away from the crime scene.

### 3. Angelica Hernandez

Hernandez is a crime scene investigator with the Harris County Institute of Forensic Science Center (HCIFSC). On April 29, 2019, she received a call regarding an individual who had been shot and transported to the hospital in critical condition. She was dispatched to the Kroger at 3300 Montrose Boulevard where she took photos of the evidence collected at the scene, including four cartridge cases, a shirt, a pair of pants, and a brown shoe.

### 4. Officer D. Laos

HPD Officer Laos canvassed the neighborhood to locate the vehicle involved in the shooting at the Kroger parking lot. He later located the vehicle several blocks away from the scene. Officer Laos and Officer S. Combs noticed a black male and a white female crossing the nearby intersection of Marshall and Mount Vernon

Streets. The female matched a photo that police had obtained from vehicle registration records and social media, and the officers detained her and the male for questioning.

### 5. Kurt Gumberger

On April 29, 2019, Gumberger was visiting a friend who lived on Kipling Street in Montrose. As he was leaving the house, he noticed two young black men at the corner of Woodhead and Kipling reaching into the storm drain across the street. Afterwards, one of the males walked toward a parked car, and the other one approached Gumberger and his friend and asked to borrow a phone or charge his phone in the house. Gumberger testified that the male appeared upset and highly agitated. Gumberger told him that he could not use his phone but that he would make a call for him. After the male gave Gumberger his mother's phone number, Gumberger called and told her where her son was. The male then walked away.

Later that evening, Gumberger saw a local news report about an alleged shooting at the nearby Kroger. The report included a photo identifying a person of interest named "Jiterion." Gumberger recognized the person as the male he had spoken to earlier that day. Gumberger provided the information he had to an assistant district attorney. At trial, Gumberger identified appellant as the individual he spoke to on the day of the shooting. He testified that he later checked his phone records

and discovered that the call he made to appellant's mother was about ten to fifteen minutes after the shooting took place.

## 6. Officer D. Combs

HPD Officer Combs[1] went to the location of the vehicle identified in the shooting. With the license plate number, he obtained the name of the registered owner and located a photo of her on Facebook. Officer Combs later saw a male and female walking nearby and noticed that the female resembled the woman in the photo. They identified themselves as Kristen Laborde and Tayshawn Williams. Officer Combs testified that the male led him to a storm drain near Kipling Street where a gun was later found.

## 7. Anushka Reyes

Reyes, a HCIFSC crime scene investigator, was assigned to process a black Kia Rio at HPD's vehicle investigation building. She took photographs of the interior and exterior of the vehicle, collected a blue shirt, a pair of blue jeans, a black glove, a green leafy substance, and a gun holster from the vehicle, and collected DNA from several areas of the vehicle.

---

[1] Combs was an HPD officer at the time of the shooting but is no longer in law enforcement.

## 8. Detective K. Persad

HPD Homicide Detective Persad was the lead investigator at the scene of the shooting. Based on information obtained from Yellow Cab Company, the victim was identified as Michael Ubani. Detective Persad testified that officers spoke with nine witnesses and reviewed several surveillance videos. The Kroger video showed that approximately fifteen minutes after Ubani parked his taxicab, a male wearing a blue, short-sleeved shirt with white lettering, gray pants, and white tennis shoes approached the cab, began shooting at the driver's side window, and then fled the scene. A surveillance video from a nearby school also showed two males get out of a dark-colored sedan at the intersection of Yoakum and Kipling Streets. The male from the front passenger seat, who was wearing a black shirt with gray bottoms and black shoes, began to run east. The passenger in the back seat removed his shirt, threw it in the front passenger seat, and ran. Detective Persad testified that another surveillance video showed two black males—one wearing a black top, gray shorts, and black sandals and the other wearing a white t-shirt, gray pants, and white shoes—running down Kipling Street.

Detective Persad testified that the information police obtained from Laborde and Williams was consistent with what the surveillance videos showed. After processing all the scenes in the investigation, police identified appellant as the

person who shot Ubani. Ubani later died at the hospital, and appellant was charged with his murder.

Detective Persad obtained a buccal swab from appellant. He ordered testing of the 9-millimeter pistol found in the storm drain and the bullet casings found at the scene. Detective Persad testified that appellant's DNA matched the DNA collected from the blue shirt found in the car and the rear left interior door handle of the car.

### 9. Marianne Beynon

Beynon, an assistant medical examiner, performed Ubani's autopsy. She testified that Ubani died from multiple gunshot wounds to his torso and left upper extremity and that the manner of death was homicide.

### 10. Chandler Bassett

Bassett, a firearms examiner, testified that the three fired cartridge cases collected from the scene of the shooting were fired from the nine-millimeter pistol collected from the storm drain.

### 11. Nicole Wilson

Wilson, a DNA analyst, compared the samples collected from several items of evidence in the case to the buccal swab obtained from appellant. The test results showed that appellant was a major contributor to the DNA found on the rear interior door handle of the Kia and the major contributor to the DNA found on the shirt taken from the vehicle.

After both sides rested, the jury found appellant guilty of murder. Following a punishment hearing, the jury assessed appellant's punishment at forty years' confinement. This appeal followed.

**Discussion**

In his sole point of error, appellant contends that the evidence is legally insufficient to support his conviction. He argues that the only witnesses who identified him as the shooter—Laborde and Williams—gave unreliable, out-of-court testimony, and the DNA evidence is insufficient to prove that he shot Ubani. The State responds that the evidence presented to the jury—which included DNA evidence, surveillance videos, and witness testimony—is sufficient to support the jury's verdict.

**A.    Standard of Review**

We review appellant's challenge to the sufficiency of the evidence under the standard enunciated in *Jackson v. Virginia*, 443 U.S. 307 (1979). *See Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). Under that standard, we examine all the evidence in the light most favorable to the verdict and determine whether a rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *Jackson*, 443 U.S. at 318–19. Evidence is insufficient under this standard in four circumstances: (1) the record contains no evidence probative of an element of the offense; (2) the record contains a mere "modicum" of evidence

probative of an element of the offense; (3) the evidence conclusively establishes a reasonable doubt; and (4) the acts alleged do not constitute the criminal offense charged. *See id.* at 314, 318 n.11, 320; *Laster v. State*, 275 S.W.3d 512, 518 (Tex. Crim. App. 2009); *Mottin v. State*, 634 S.W.3d 761, 765 (Tex. App.—Houston [1st Dist.] 2020, pet. ref'd).

The jury is the sole judge of the credibility of witnesses and the weight of their testimony, and our role on appeal is simply to ensure that the evidence reasonably supports the jury's verdict. *Montgomery v. State*, 369 S.W.3d 188, 192 (Tex. Crim. App. 2012). The jury may reasonably infer facts from the evidence presented, credit the witnesses it chooses, disbelieve any or all of the evidence or testimony proffered, and weigh the evidence as it sees fit. *Galvan-Cerna v. State*, 509 S.W.3d 398, 403 (Tex. App.—Houston [1st Dist.] 2014, no pet.) (citing *Canfield v. State*, 429 S.W.3d 54, 65 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd)). Inconsistencies in the evidence are resolved in favor of the verdict. *See Curry v. State*, 30 S.W.3d 394, 406 (Tex. Crim. App. 2000).

A murder conviction may be based on circumstantial evidence. *See Temple v. State*, 390 S.W.3d 341, 359 (Tex. Crim. App. 2013) (citing *Clayton v. State*, 235 S.W.3d 772, 778 (Tex. 2007)). "Circumstantial evidence is as probative as direct evidence in establishing the guilt of an actor, and circumstantial evidence alone can be sufficient to establish guilt." *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App.

9

2007). "Each fact need not point directly and independently to guilt if the cumulative force of all incriminating circumstances is sufficient to support the conviction." *Nisbett v. State*, 552 S.W.3d 244, 262 (Tex. Crim. App. 2018). "On appeal, the same standard of review is used for both circumstantial and direct evidence cases." *Hooper*, 214 S.W.3d at 13.

## B.     Applicable Law

Section 19.02 of the Penal Code describes three acts that constitute murder, two of which are relevant here. A person commits the offense of murder if the person (1) "intentionally or knowingly causes the death of an individual" or (2) "intends to cause serious bodily injury and commits an act clearly dangerous to human life that causes the death of an individual." TEX. PENAL CODE § 19.02(b)(1), (2).

## C.     Analysis

Appellant argues that the only direct evidence showing that he shot Ubani came from the hearsay statements of two detained suspects, Williams and Laborde. He asserts that their out-of-court statements were not given under oath or subject to cross-examination and are, therefore, unreliable and insufficient to support his conviction.

The record shows that neither Laborde nor Williams testified at trial or provided out-of-court testimony. While it is undisputed that Laborde and Williams provided information to the police in the course of their investigation, the State did

not tell the jury that either Laborde or Williams identified appellant as the person who killed Ubani or otherwise attempt to use their statements as evidence of appellant's guilt. Detective Persad testified that the information he obtained from Laborde and Williams was consistent with what the surveillance videos showed. Their statements to police were not before the jury, and the jury did not rely on them in determining appellant's guilt.

Appellant next argues that the DNA evidence did not directly link him to Ubani's murder. Specifically, he argues that the DNA evidence shows only that he was present in the car where police later located the shirt, but it does not prove that he shot Ubani.

The State presented the following evidence at trial: (1) Connerly's testimony identifying the shooter as approximately 5'11," slim, with an Afro hairstyle, and wearing a blue shirt and dark pants; (2) Kroger surveillance video showing a man—who matched appellant's description, and wearing a blue short-sleeved shirt—shoot Ubani and flee the scene; (3) surveillance video from a nearby school showing the shooter remove his shirt, toss it into the front passenger seat of the car, and run; (4) Detective Persad's testimony that police located the car several blocks from the murder scene and a shirt inside matching the one worn by the shooter as seen in surveillance video; (5) Gumberger's testimony that he saw two black males reach inside a storm drain, one of the males approached him and asked to use his phone,

11

and Gumberger later recognized the male in a photo shown on the local news identifying him as a person of interest in the shooting named "Jiterion"; (6) testimony that police found the gun used to shoot Ubani in the storm drain about a mile from the scene of the shooting; and (7) testimony that appellant's DNA profile matched the DNA collected from the rear interior door handle of the car and the DNA found on the shirt taken from the vehicle.

In circumstantial evidence cases, it is not necessary that every fact and circumstance point directly and independently to the defendant's guilt; it is enough if the conclusion is warranted by the combined and cumulative force of all the incriminating circumstances. *Hooper*, 214 S.W.3d at 13. Here, the DNA evidence, when considered in conjunction with the additional circumstantial evidence admitted at trial, was sufficient to support the jury's finding that appellant shot Ubani. *See id.* Viewing this evidence in the light most favorable to the verdict, we conclude that a rational juror could have found that appellant intentionally or knowingly caused Ubani's death or intended to cause serious bodily injury and committed an act clearly dangerous to human life that caused his death. Accordingly, we hold the evidence is legally sufficient to support's appellant's conviction. *See Torres v. State*, 343 S.W.3d 297, 302 (Tex. App.—Eastland 2011, pet. ref'd) (holding evidence was sufficient to establish that defendant intentionally or knowingly caused victim's death by shooting her where police search of home of defendant's parents led to discovery of

12

clothing defendant wore during shooting and pistol defendant used, DNA test results showed that blood on defendant's clothing was victim's, and medical examiner testified that defendant's gun was the murder weapon); *Wilson v. State*, 195 S.W.3d 193, 203–05 (Tex. App.—San Antonio 2006, no pet.) (holding evidence was legally sufficient to support murder conviction where, in addition to other evidence, neighbor's testimony placed vehicle of same make and model as defendant's in complainant's driveway at approximate time of murder, and defendant's cell phone records indicated defendant was traveling across town to within few miles of complainant's home); *see also Boldon v. State*, No. 01-12-00486-CR, 2013 WL 5637031, at *4–5 (Tex. App.—Houston [1st Dist.] Oct. 15, 2013, pet. ref'd) (mem. op., not designated for publication) (concluding circumstantial evidence supported jury's finding that defendant murdered victim where evidence showed, among other things, that defendant was at victim's apartment around time of death, surveillance video showed person resembling defendant leaving complex, DNA evidence showed victim's blood was found inside defendant's apartment, and defendant attempted to destroy evidence to conceal guilt). Accordingly, we overrule appellant's sole point of error.

## Conclusion

We affirm the trial court's judgment.

Kristin M. Guiney
Justice

Panel consists of Chief Justice Adams and Justices Gunn and Guiney.

Do not publish. TEX. R. APP. P. 47.2(b).