# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-01-00163-CR

**Romualdo Calixto, Appellant**

**v.**

**The State of Texas, Appellee**

## FROM THE DISTRICT COURT OF TRAVIS COUNTY, 147TH JUDICIAL DISTRICT
## NO. 0993198, HONORABLE WILFORD FLOWERS, JUDGE PRESIDING

A pickup truck driven by appellant Romualdo Calixto forced another truck driven by Enrique Rodriguez to the side of the road. Silvestre Martinez Calixto, in the truck with his brother Romualdo, then fired at least ten gunshots at Rodriguez. Four bullets struck Rodriguez, killing him. At a joint trial, a jury found both appellant and Silvestre Calixto guilty of murder and assessed punishment at imprisonment for life. *See* Tex. Pen. Code Ann. § 19.02 (West 1994). Appellant brings forward twelve points of error asserting error in the admission of evidence and in the jury charge, and complaining that his trial counsel was ineffective. We will overrule these points and affirm appellant's conviction.[1]

---

[1] Silvestre Calixto's murder conviction is affirmed in a separate opinion. *Calixto v. State*, No. 03-01-00016-CR (Tex. App.—Austin Dec. 20, 2001, no pet. h.) (not designated for publication).

Rodriguez's murder was the outgrowth of a feud between the Calixto and Rodriguez families in Mexico. Members of appellant's family testified that there had been bad blood between the families for many years. They said that a member of the Rodriguez family fatally shot appellant's uncle in Mexico in 1988, and that another Rodriguez fatally shot appellant's cousin in Mexico one month before the instant shooting. Appellant's brother Efren Calixto testified that he heard Romualdo and Silvestre say at a family gathering that "they were going to get even for this problem that had been handed to my uncle and cousin in Mexico." Efren said that his brothers had been drinking and he did not take them seriously, but he also testified that he "tried to counsel them, telling them we didn't want any trouble here in the United States."

There was testimony that Enrique Rodriguez had been involved in attacks against appellant's family members in Mexico. Efren Calixto testified that Rodriguez was the man who shot his uncle. Both Efren and another brother, Doroteo Calixto, testified that Rodriguez had driven past Silvestre's Austin apartment on several occasions, and that Silvestre had expressed concern for his and his family's safety. Doroteo testified that Silvestre told him the day before Rodriguez was killed that he was going to shoot Rodriguez before Rodriguez could shoot him.

Appellant and Silvestre were arrested within hours of Rodriguez's murder and gave videotaped statements to the police in Spanish. The videotapes and transcriptions of the statements in both Spanish and English were introduced in evidence. Appellant told the police that he had agreed to drive Silvestre to work that morning. After they left Silvestre's apartment, Silvestre told appellant to drive to Rodriguez's apartment and gave him directions. When they spotted Rodriguez in his

2

pickup, Silvestre ordered appellant to drive up beside Rodriguez's truck. Appellant did so, and then Silvestre shot Rodriguez with a pistol he was carrying.

In his statement, Silvestre admitted shooting Rodriguez. His description of the events leading up to the shooting was similar to appellant's.

### *Admission of appellant's statement*

Before custodial interrogation, a suspect must be advised of and knowingly and voluntarily waive his right to remain silent. *Miranda v. Arizona*, 384 U.S. 436, 467-68, 475 (1966); Tex. Code Crim. Proc. Ann. art. 38.22, § 3(a)(2) (West Supp. 2002). The record shows that Austin Police Officer Ismael Campa advised appellant of his constitutional and statutory rights, including the right to remain silent, before questioning him. The record also shows that appellant waived his rights and agreed to speak to the police. Appellant argues, however, that his waiver of the right to silence was not knowing and voluntary because he did not understand the nature of the right and because the police deceived him regarding certain material facts.

The transcript of appellant's statement reflects that Officer Campa, after advising appellant of his rights, asked him if he was willing to talk, "Yes or no?" Appellant replied, "And if, if I say no? If we don't talk?" Campa answered, "We do need to talk. Are we going to talk?" Appellant responded, "That's fine." Appellant contends without further elaboration that this exchange demonstrates that he did not understand the nature of the right to remain silent. To the contrary, appellant's question shows he understood that he could refuse to talk to the officer. It was

3

neither possible nor necessary for the officer to predict for appellant the consequences of his decision. Point of error eight is overruled.

Appellant also complains that Campa misled him by telling him several times that the police already knew what had happened and that appellant did not "do anything." A confession will be deemed involuntary only if it was induced by an interrogation technique calculated to produce an untruthful confession or offensive to due process. *Dotsey v. State*, 630 S.W.2d 343, 349 (Tex. App.—Austin 1982, no pet.). That a friendly, supportive, nonconfrontational style of questioning may prove effective in eliciting an incriminating statement does not mean that such questioning is improper or that the resulting statement is involuntary. *Lane v. State*, 933 S.W.2d 504, 513 (Tex. Crim. App. 1996). The tactics shown by this record were well within the bounds of propriety. Point of error nine is overruled.

Appellant further argues that a sworn interpreter should have been used to interpret his videotaped statement when it was played for the jury. Similarly, he argues that the English transcription should have been prepared by a sworn interpreter. He relies on *Leal v. State*, 782 S.W.2d 844 (Tex. Crim. App. 1989). In *Leal*, the court held that the admission of a recorded conversation in a foreign language is analogous to testimony by a non-English speaker, and that the safeguards of article 38.30 apply. *Leal*, 782 S.W.2d at 849; Tex. Code Crim. Proc. Ann. art. 38.30 (West Supp. 2002). The court held that on a proper motion or objection, an interpreter must be sworn to translate the recorded conversation. *Leal*, 782 S.W.2d at 849. The court further held that it was error to use a written translation of the recorded conversation over objection without

determining the qualifications of the person who made the translation or making that person available for cross-examination. *Id.*

Appellant concedes that he did not request the appointment of a sworn interpreter, and that no objection to the admission of either the videotape or the written transcription/translation was made on this ground. He argues that his attorney was ineffective because he failed to request the use of a sworn interpreter or to object to the introduction of the written transcript/translation on this ground.

Prior to their admission in evidence, the videotapes of the Calixto brothers' statements and the written transcriptions/translations of the statements were reviewed outside the presence of the jury by the interpreter who prepared the transcriptions, a second interpreter, Officer Campa, and appellant's trial counsel (who appellant says was fluent in Spanish).[2] A few errors in the transcriptions were identified and corrected. The attorneys for both defendants then indicated their satisfaction. Appellant now cites one instance in which he claims there was "confusion and contest" regarding the English translation of his statement. The Spanish word "cañon" used by appellant was translated in the written transcription as "piece." Officer Campa testified before the jury that the Spanish word literally translated as "cannon," but was also a slang term for "arm, weapon, pistol, gun." Questions regarding alleged inaccuracies in a translation are issues of fact that must be settled by the trier of fact. *Garcia v. State*, 887 S.W.2d 862, 875 (Tex. Crim. App. 1994).

---

[2] The record contradicts appellant's assertion that the interpreter who prepared the transcriptions was not available for questioning by counsel.

5

Under the circumstances shown by this record, appellant's attorney's failure to insist that the procedures outlined in *Leal* be followed was not outside the range of reasonable professional assistance and does not appear to have prejudiced appellant's defense. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984); *Hernandez v. State*, 726 S.W.2d 53, 57 (Tex. Crim. App. 1986). Points of error three and four are overruled.

Appellant argues that the written transcription of his videotaped statement was inadmissible for two additional reasons. First, he contends the transcription was hearsay. Tex. R. Evid. 802. Second, he contends the transcription was inadmissible because it was not a written statement within the meaning of article 38.22. Tex. Code Crim. Proc. Ann. art. 38.22, §§ 1, 2 (West 1979). Once again, appellant acknowledges that these alleged errors were not preserved for review and urges that his trial counsel was ineffective for that reason.

A defendant's own out-of-court statement is not hearsay when offered against him. Tex. R. Evid. 801(e)(2)(A); *Trevino v. State*, 991 S.W.2d 849, 853 (Tex. Crim. App. 1999). The opinion cited by appellant, *Moore v. State*, 999 S.W.2d 385, 401 (Tex. Crim. App. 1999), does not hold to the contrary. Appellant concedes that because he spoke Spanish, it was appropriate for the jury to be provided a translation of his oral statement. He cites no authority supporting his assertion that a translation cannot be in writing, or that a written translation of an admissible oral statement made in a foreign language must also be admissible as a written statement under article 38.22, section 2. The interests served by article 38.22 were satisfied when appellant's oral statement was taken in accordance with section 3. Counsel's failure to object to the admission of the transcription on these grounds did not constitute ineffectiveness. Points of error five, six, and seven are overruled.

6

***Admission of Silvestre Calixto's statement***

Appellant contends his Sixth Amendment right to confront the witnesses against him was violated by the admission of Silvestre Calixto's statement to the police.[3] U.S. Const. amend. VI. Appellant concedes that no objection on this ground was voiced at trial, but urges that the "right not recognized" exception to the contemporaneous objection rule applies because the opinion on which he relies had not been announced at the time of his trial.

As a general rule, even errors of constitutional dimension must be preserved by a trial objection. Tex. R. App. P. 33.1(a)(1); *see Marin v. State*, 851 S.W.2d 275, 279-80 (Tex. Crim. App. 1993). There is an exception to this rule for an error involving a novel constitutional claim. *Mathews v. State*, 768 S.W.2d 731, 733 (Tex. Crim. App. 1989). A defendant does not forfeit his right to assert a constitutional violation by failing to object if the constitutional right had not been recognized at the time of his trial. *Id*. (quoting *Ex parte Chambers*, 688 S.W.2d 483, 486 (Tex. Crim. App. 1985) (Campbell, J., concurring)).

The Sixth Amendment confrontation guarantee was held applicable against the states in 1965. *Pointer v. Texas*, 380 U.S. 400, 406 (1965). In 1968, the admission of a nontestifying codefendant's out-of-court statement implicating the defendant was held to violate the Confrontation Clause. *Bruton v. United States*, 391 U.S. 123, 126 (1968). It cannot be said that the admission of Silvestre's out-of-court statement raised a previously unrecognized Sixth Amendment issue.

---

[3] Appellant raises this contention in a supplemental brief filed with this Court's permission.

Appellant relies on this Court's opinion in *Mendez v. State*, 56 S.W.3d 880 (Tex. App.—Austin Sep. 13, 2001, pet. filed). In that case, an out-of-court custodial statement implicating the defendant in the charged offense, made by a declarant who was not the defendant, was introduced pursuant to the hearsay exception for statements against the penal interest of the declarant. Tex. R. Evid. 803(24). We held that under the circumstances of that case, the admission of the statement violated the defendant's Sixth Amendment confrontation right. *Mendez*, 56 S.W.3d at 892-93. In reaching that conclusion, we applied principles previously announced by the court of criminal appeals but not previously applied to a statement made during custodial interrogation. *Id*. at 889, *see Guidry v. State*, 9 S.W.3d 133, 147-49 (Tex. Crim. App. 1999); *Dewberry v. State*, 4 S.W.3d 735, 750-52 (Tex. Crim. App. 1999); *Cofield v. State*, 891 S.W.2d 952, 955-57 (Tex. Crim. App. 1994). In other words, *Mendez* did not create a new constitutional right but merely applied established Sixth Amendment principles to a new factual setting.

We hold that appellant's failure to object to the admission of Silvestre Calixto's statement on Sixth Amendment grounds forecloses our consideration of this point of error. *See Dewberry*, 4 S.W.3d at 752. Although appellant does not argue that his trial attorney was ineffective for failing to object, the record would not support such a conclusion. There was considerable circumstantial evidence tending to implicate appellant as a party to Rodriguez's murder.[4] Furthermore, appellant's own statement to the police described his involvement in the murder in much the same way as Silvestre's statement. On this record, counsel's failure to object to the admission

---

[4] Because appellant does not challenge the sufficiency of the evidence, we do not review it in detail in this opinion.

8

of Silvestre's statement cannot be said to have prejudiced appellant's defense to such a degree as to have denied him a fair trial. *See Strickland*, 466 U.S. at 687; *Hernandez*, 726 S.W.2d at 57; *see also Schneble v. Florida*, 405 U.S. 427, 430-32 (1972) (*Bruton* error held harmless). Appellant's supplemental point of error is overruled.

### *Other points of error*

Appellant contends the evidence raised the question of whether Efren and Doroteo Calixto were accomplice witnesses whose testimony required corroboration. *See* Tex. Code Crim. Proc. Ann. art. 38.14 (West 1979). Appellant argues that this question should have been submitted to the jury as a fact issue, and that his attorney was ineffective for failing to request it.

An accomplice witness is one who participates with the defendant before, during, or after the commission of the crime. *McFarland v. State*, 928 S.W.2d 482, 514 (Tex. Crim. App. 1996). This participation must involve an affirmative act or commission by the witness to promote the commission of the offense. *Id*. Having knowledge of a crime and failing to disclose it does not make one an accomplice. *Blake v. State*, 971 S.W.2d 451, 454 (Tex. Crim. App. 1998). To be subject to the accomplice witness rule, a witness must be susceptible to prosecution for the same offense for which the accused is on trial. *McFarland*, 928 S.W.2d at 514.

When the evidence clearly shows that a witness was an accomplice to the crime as a matter of law, the trial court must so instruct the jury. *Blake*, 971 S.W.2d at 455. But if the evidence is conflicting and it is not clear whether the witness was an accomplice, the court should allow the

9

jury to determine the question as an issue of fact. *Id*. This is what appellant claims should have been done here.

We have already mentioned Efren Calixto's testimony describing the conversation he overheard in which appellant and Silvestre indicated their intention to "get even for this problem" in Mexico.[5] We have also mentioned Doroteo Calixto's testimony describing Silvestre's announced intention to kill Rodriguez. Doroteo also testified that appellant told him he was angry about their cousin's murder in Mexico. Finally, there was testimony that on the morning of the murder, Silvestre called Efren and told him, in effect, that he had killed Rodriguez. At the very most, this evidence shows that Efren and Doroteo knew that appellant and Silvestre intended to kill Rodriguez. The evidence does not even suggest that Efren or Doroteo affirmatively acted to promote the commission of the offense or that either of them could be prosecuted for Rodriguez's murder.

No fact issue was raised as to whether Efren and Doroteo Calixto were accomplice witnesses, and appellant's trial counsel was not ineffective for failing to request the submission of the question to the jury. Points of error one and two are overruled.

Next, appellant contends the district court commented on the weight of the evidence by instructing the jury in its charge:

> Witnesses may be impeached by showing that they have made other and different statements out of court from those made before you on the trial. You may consider such impeaching evidence, if any, as it may tend to affect the weight to be given the testimony of the witnesses so impeached and their credibility (if it does do

---

[5] Appellant refers us to other statements by Efren, but they were made outside the jury's presence.

so); but such impeaching evidence, if any, is not to be considered by you as tending to establish the alleged guilt of the defendant, or any fact in the case.

Appellant argues that the instruction improperly singled out those witnesses who may have made prior inconsistent statements and suggested they may be less worthy of belief. *See* Tex. Code Crim. Proc. Ann. art. 36.14 (West Supp. 2002) (trial court may not comment on weight of evidence in charge). Appellant did not object to the instruction, but urges that it was fundamentally erroneous. *See Almanza v. State*, 686 S.W.2d 157, 171 (Tex. Crim. App. 1985) (op. on reh'g).

Evidence admitted only for impeachment purposes is without probative value and cannot be considered as evidence of the defendant's guilt. *Key v. State*, 492 S.W.2d 514, 516 (Tex. Crim. App. 1973). When evidence is admitted for a limited purpose, the court may restrict the evidence to its proper scope and instruct the jury accordingly. Tex. R. Evid. 105(a). By limiting the jury's consideration of the impeaching evidence "if any," the charge applied the law to the facts to the extent it was possible to do so without commenting on the weight of the evidence. *See Brooks v. State*, 580 S.W.2d 825, 833 (Tex. Crim. App. 1979); *Easter v. State*, 867 S.W.2d 929, 941 (Tex. App.—Waco 1993, pet. ref'd). Finding no error, we overrule point of error ten.

Finally, appellant contends that if the errors of counsel previously discussed did not individually constitute ineffectiveness, the cumulative effect of the errors did. We have already determined that none of the errors alleged by appellant was in fact error; actions or omissions by counsel that are not erroneous cannot constitute ineffectiveness, whether considered singly or collectively. We have also determined that one arguable error by counsel not alleged by appellant, the failure to object to *Bruton* error, was harmless. Point of error eleven is overruled.

11

The judgment of conviction is affirmed.

_____

Lee Yeakel, Justice

Before Justices Kidd, Yeakel and Patterson

Affirmed

Filed:   December 20, 2001

Publish

12