**Opinion filed March 20, 2025**



# In The

# Eleventh Court of Appeals

_____

## No. 11-23-00037-CR

_____

## JUAN JOSE VALLEJO NUNEZ, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 266th District Court**
**Erath County, Texas**
**Trial Court Cause No. CR15433**

## O P I N I O N

The jury found Appellant, Juan Jose Vallejo Nunez[1], guilty of the murder of Eleno Trejo. *See* TEX. PENAL CODE ANN. § 19.02(b)(2) (West Supp. 2024). The jury assessed Appellant's punishment at confinement for twenty-one years in the Institutional Division of the Texas Department of Criminal Justice. In his sole issue

---

[1]We note that Appellant's name as it appears on the indictment is Juan Jose Vallejo Nunez but that the name on the judgment is Juan Jose Nunez-Vallejo.

on appeal, Appellant contends that the trial court erred when it admitted his videotaped interrogation by law enforcement because the person that translated for the officers in their interrogation was not a sworn, competent translator. We affirm.

*Background Facts*

*The Incident*

On the evening of November 3, 2019, Sergeant Chris Hill with the Erath County Sheriff's Office was dispatched to a reported stabbing. Sergeant Hill was advised that the suspect had left the scene in a blue Ford Expedition. A blue Ford Expedition traveling in the opposite direction passed Sergeant Hill while he was en route to the scene, so Sergeant Hill turned his vehicle around and conducted a traffic stop on the Expedition. Sergeant Hill observed two men in the vehicle as he approached. Appellant, who was in the front passenger seat, had a bloody right hand wrapped in a T-shirt. Sergeant Hill noticed blood on the front passenger seat and the vehicle's dashboard.

After additional officers arrived at the traffic stop, Sergeant Hill proceeded to the scene of the reported stabbing. Sergeant Hill was the first responder to arrive. Sergeant Hill testified that he saw several people standing next to a black GMC Yukon and a man laying on the ground covered by a blanket. Sergeant Hill saw that the man laying on the ground had a stab wound on his "left lower abdomen" and heard the man saying "help me" in Spanish.

The man that had been stabbed was identified as Eleno Trejo. Trejo died at a hospital from his injuries. Dr. Nizam Peerwani, the medical examiner that performed Trejo's autopsy, testified that Trejo had a total of three stab wounds: one on the left side of his chest, one on the left side of his lower abdomen, and a third on his scalp behind his left ear. The stab wound to Trejo's abdomen was fatal.

Appellant was transported to the sheriff's office so that he could speak to an investigator. Investigator David Southerland with the Erath County Sheriff's Office

interviewed Appellant. Melinda Garcia, the evidence technician for the Erath County Sheriff's Office, acted as a translator for Appellant during his videotaped interview with Investigator Southerland. Garcia guided Appellant through a copy of the *Miranda*[2] warnings written in Spanish while Investigator Southerland read Appellant the *Miranda* warnings in English. Thereafter, Appellant voluntarily waived his rights and spoke with Investigator Southerland.

Investigator Southerland testified that Appellant, Appellant's brother, and Trejo worked together at a dairy and that Trejo was married to Appellant's aunt. Appellant told Investigator Southerland that he was afraid of Trejo because Trejo was much bigger than Appellant, got "really aggressive" when he was drunk, and had physically abused his aunt.

Investigator Southerland said that Appellant and Trejo had gotten into a disagreement earlier in the day. Appellant told Investigator Southerland that Javier, another man who worked at the dairy, "set up a meeting" between Appellant and Trejo so that they could talk. Investigator Southerland testified that Javier gave Appellant two knives and told Appellant to "defend yourself" if Trejo attacked him.

Appellant told Investigator Southerland that he met Trejo at the driveway to Trejo's house and that they had a verbal confrontation that became physical when Trejo grabbed Appellant's shirt and the two began hitting each other. Appellant said another man named Paco was with Trejo. Appellant told Investigator Southerland that he brandished a knife to scare Trejo, but Trejo took the knife away from him. Investigator Southerland testified that Appellant got another knife, confronted Trejo again, and at some point, stabbed Trejo "on the lower side." Appellant told Investigator Southerland that he cut his hand when Paco pulled the knife away from him after he stabbed Trejo.

---

[2]*See Miranda v. Arizona*, 384 U.S. 436, 444–45 (1966); *see also* TEX. CODE CRIM. PROC. ANN. art. 38.22, § 2(a) (West Supp. 2024).

Appellant told Investigator Southerland that he left because he did not mean to hurt Trejo and "was scared" when his brother told him that the police were coming. Appellant's videotaped interview was admitted into evidence during Investigator Southerland's testimony and played for the jury. Clothing with bloodstains and a "foldable knife" were recovered from the blue Ford Expedition pursuant to a search warrant and a "steak knife" was recovered from the console.

*Melinda Garcia's Translation*

Garcia testified that, in addition to collecting evidence, she was asked on the night of the stabbing to "interpret" during Investigator Southerland's interview with Appellant. Garcia said that she speaks "[v]ery little" Spanish and that she "wouldn't be the first one to call . . . on an interview." Garcia testified that she translated for the interview "to the best of [her] ability" and that she was satisfied that Appellant understood the questions she was asking him. Garcia said she made sure to ask Appellant whether he was understanding her and that she clarified and expanded upon questions when Appellant asked her to do so. Garcia further said that she was satisfied that Appellant was giving responsive answers to the questions he was being asked and that it appeared as though Appellant was satisfied with Garcia's interpretation of his answers. Garcia testified that her translation was accurate, reliable, and correct.

Before Investigator Southerland's testimony, Appellant's trial counsel asked the trial court for the opportunity to ask Garcia more questions "based upon [her] testimony yesterday and her own near impeachment of her interpretive abilities." At that time Appellant's trial counsel continued his cross-examination of Garcia outside the presence of the jury. Appellant's trial counsel asked Garcia what she meant when she said she would not be "the first choice" but "did the best that [she] could." Garcia responded that:

4

I don't want to be put in that role all the time as an interpreter . . . I'm not quite comfortable all the time in doing that. But I do make sure that when I interpret for people that I do make sure that I deliver the translation so that they could understand English and Spanish and I felt like I did an accurate interpretation for the Defendant.

Garcia testified that her interpretation was "75, 85 percent" accurate because translating the Spanish language was "very difficult" for someone who "isn't fluent" or "isn't a certified translator." Garcia testified that she had never testified in court before as an interpreter, did not primarily speak Spanish, and that Appellant's interview was the first time she was asked to be an interpreter. During the State's redirect examination, Garcia reiterated that her translation was accurate. Appellant's trial counsel then moved to suppress Appellant's statement "based upon the unreliability of the interpretation provided by [Garcia], being it's at only 75 to 85 percent effective based upon her own admission." The trial court denied Appellant's motion to suppress.

The State subsequently offered Appellant's videotaped interview during Investigator Southerland's testimony. Appellant's trial counsel stated: "Your Honor, subject to the prior Motion to Suppress and the ruling, no objection to it at this point." The trial court admitted the interview and it was played for the jury. Appellant's trial counsel asked Investigator Southerland if he would "deem [a] confession true" if it was interpreted by an interpreter that was, "by her own admission, . . . only 75 to 85 percent effective or correct," and Investigator Southerland responded, "I really don't know. Honestly, I don't have an answer for that one." Appellant reurged his motion to suppress after Investigator Southerland's testimony, which the trial court denied.

Appellant's trial counsel recalled Garcia after the State rested. Garcia confirmed in the presence of the jury that she had never received training to be an interpreter and that she had never been appointed as an interpreter by a court. Garcia

also confirmed that her interpretation was seventy-five to eighty-five percent accurate. During the State's redirect examination, Garcia confirmed that she believed that her interpretation of Appellant's answers was accurate.

*Analysis*

Appellant contends that the trial court erred when it denied his oral motion to suppress his videotaped interrogation and admitted it because Garcia's translation of his answers during the interview were not "sworn to by a person competent to translate from English to Spanish and Spanish to English in violation of Appellant's right to due process and in violation of Article 38.30 of the Texas Code of Criminal Procedure."

The State asserts that Appellant waived his claimed error because he failed to specifically object to the admission of his videotaped interrogation. The State is incorrect. Appellant's trial counsel made an oral motion to suppress Appellant's videotaped interrogation based on Garcia's estimation that her interpretation was, at most, eighty-five percent accurate. Further, Appellant's trial counsel thereafter made two additional objections to the videotaped interrogation. The trial court denied each of Appellant's objections. Accordingly, Appellant has preserved for our review the issue of whether his videotaped interrogation was properly admitted. *See* TEX. R. APP. P. 33.1.

We review a trial court's ruling on a motion to suppress under a bifurcated standard of review, giving almost total deference to the trial court's determination of historical facts that the record supports and considering de novo the application of the law to the facts. *See State v. Heath*, 696 S.W.3d 677, 689 (Tex. Crim. App. 2024). We review a trial court's ruling on the admissibility of evidence for an abuse of discretion. *Coble v. State*, 330 S.W.3d 253, 272 (Tex. Crim. App. 2010). We will uphold the trial court's decision unless it lies outside the zone of reasonable disagreement. *Salazar v. State*, 38 S.W.3d 141, 153–54 (Tex. Crim. App. 2001).

Article 38.30(a) states, in pertinent part, that:

> When a motion for appointment of an interpreter is filed by any party or on motion of the court, in any criminal proceeding, it is determined that a person charged or a witness does not understand and speak the English language, an interpreter must be sworn to interpret for the person charged or the witness.

CRIM. PROC. art. 38.30(a) (West 2018). Appellant asserts that Article 38.30(a) of the Texas Code of Criminal Procedure requires that "in any criminal proceeding where a party or a witness does not speak English[,] a sworn interpreter must be provided," and that Garcia "was not sworn" and "admitted on the witness stand that she was not qualified to translate and by her own estimate the translation she provided was only 75-85% accurate."

To the extent Appellant asserts that Garcia should have been sworn before acting as a translator during Appellant's custodial interrogation, we note that Appellant cites no authority in support of his contention that he had the right to the assistance of a sworn and qualified interpreter during a police interrogation. The Austin Court of Appeals has noted the absence of authority requiring that a sworn and qualified interpreter be provided to the accused during a preindictment police interrogation. *Gonzalez v. State*, No. 03-21-00104-CR, 2023 WL 3873493, at *10 (Tex. App.—Austin June 8, 2023, no pet.) (mem. op., not designated for publication). Further, the Court of Criminal Appeals has previously indicated that the right to a sworn and qualified interpreter is a trial right designed to ensure that a defendant can understand and participate in the proceedings in a meaningful way. *Linton v. State*, 275 S.W.3d 493, 500–01 & n.13 (Tex. Crim. App. 2009); *see Gonzalez*, 2023 WL 3873493, at *10.

Appellant cites *Leal v. State* in support of his proposition that his videotaped interrogation did not comply with the requirements of Article 38.30. 782 S.W.2d 844 (Tex. Crim. App. 1989). In *Leal*, a cooperating codefendant had a conversation

7

with an appellant[3] while wearing a concealed microphone. *Id.* at 847. The conversation, which was mostly in Spanish, was recorded via a tape recorder and admitted into evidence. *Id.* The jury first listened to the recording while reviewing a verbatim transcript of the conversation. *Id.* Then, the jury listened to the recording a second time "with the assistance of an English transcript prepared by the prosecution." *Id.* The record did not indicate who prepared the translation, and no one was sworn by the trial court as an interpreter. *Id.* at n.4.

At trial, the appellants objected to "errors and critical omissions" in the State's prepared English transcript and to "not being given enough time to prepare their own transcript." *Id.* at 848. The trial court ruled that the State's English transcript would not be admitted into evidence and that the jury could only use the transcript while listening to the recording. *See id.* The appellants objected to the admission of the recording "unless there is a translation, an accurate translation made at the time the tapes are played." *Id.* The appellants further asked the trial court for time to prepare their own translation. *Id.* The next day, the trial court informed the appellants that the tapes would be played for the jury twice—once with the aid of a verbatim transcript, and once with the aid of the State's English transcript. *Id.* The trial court did not appoint an official interpreter to make a contemporaneous translation of the recording. *Id.*

The Court of Criminal Appeals held in *Leal*:

> This situation is analogous to one where a non-English speaking witness testifies, and the safeguards of [Article] 38.30 apply. In the face of a proper motion or objection an interpreter must be sworn to translate the conversation, so long as the interpreter is "considered to possess adequate interpreting skills for the particular situation" and is "familiar with the use of slang" to the satisfaction of the trial court. . . .

---

[3]The two appellants in *Leal* jointly appealed their convictions as one party. *Id.* at 845.

The trial court did not comply with the procedures set out in [Article] 38.30[.] An interpreter was not sworn in to translate the conversation for the jury. There is nothing that was admitted in evidence that would be an accurate translation of the Spanish conversation. Though the trial court and the jury relied upon an English transcript prepared by the State, there was no positive identification of who made the translation, there was no evidence they were qualified to make the translation, and there was no record that they were officially sworn to make the translation. To compound this problem even more, the alleged English translation was not admitted into evidence at trial. The individuals who made the translation, whoever they were, were not called to the stand so that the accuracy of their work could be subject to cross-examination. We conclude that the trial court erred when it admitted the tape recording into evidence without it being translated from Spanish to English by a sworn interpreter. It was error for the trial court to use the State's unsworn translation to aid the jury.

*Leal*, 782 S.W.2d at 849–50 (citations omitted). Therefore, the court's holding in *Leal* was consistent with the language of Article 38.30. *See* CRIM. PROC. art. 38.30(a).

It is important to note that Appellant's trial counsel sought different relief than defense counsel in *Leal*. In *Leal*, defense counsel did not object to the admissibility of the tape recording. Instead, he only requested that there be an accurate and sworn-to translation of the tape recording admitted at trial. *Leal*, 782 S.W.2d at 848. Here, Appellant's trial counsel made no request for the appointment of an interpreter, as required by Article 38.30, and instead only sought to suppress the entirety of the videotaped interrogation based on the "unreliability" of Garcia's translation. If Appellant's trial counsel wanted to present a translation to the jury that he claims would have been "accurate," he should have requested the opportunity to do so. *See Castrejon v. State*, 428 S.W.3d 179, 185 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Upon learning that the State intended to offer the recording into evidence, defense counsel could have requested that the trial court appoint an interpreter to

translate the Spanish part of the recording into English and that it grant extra time for the translation to be made.").

We additionally note that the clerk's record contains two sworn-to translations of Appellant's videotaped interrogation. The affidavits accompanying the translations state that the translator provided the translations to Appellant's trial counsel in 2020, and the file stamp on the affidavits indicate that the translations had been filed with the trial court since May 2021. Appellant's trial did not begin until February 2023. Accordingly, Appellant's trial counsel had translations available to him well in advance and at the time of trial, and he could have requested to present those translations to the jury at trial, if he so chose. Alternatively, Appellant could have sought his own translation of the videotaped interrogation and presented it at trial.[4] Appellant did neither. Instead, Appellant's trial counsel moved to suppress the entire videotaped interrogation based on the "unreliability" of Garcia's translation.

Because Appellant's trial counsel's objection to the videotaped interrogation was focused on the accuracy of Garcia's translation during the interrogation, Article 38.30 is inapplicable to the issue presented to us on appeal. Further, the facts before us do not present a confrontation issue like the translation in *Leal*. In *Leal*, the record did not indicate who provided the translation, whether they were competent to make the translation, or whether the translation was sworn to. *Leal*, 782 S.W.2d at 849. The court noted that the failure to call the person who prepared the translation to testify prevented the appellants from effectively cross-examining the translator on the accuracy of the translations. *Id.* Here, Appellant's trial counsel cross-examined Garcia at two different times during trial about her Spanish fluency, her lack of training as an interpreter, and the accuracy of her translation. Thus,

---

[4]Further, Appellant did not present another translation for the trial court's consideration in a motion for new trial.

unlike *Leal*, Appellant had the opportunity to question Garcia about the accuracy of her translation and to impeach the translation.

Finally, Appellant's challenge to the accuracy of Garcia's translation was a fact question for the jury to determine. *See Calixto v. State*, 66 S.W.3d 505, 510 (Tex. App.—Austin 2001, pet. ref'd) (citing *Garcia v. State*, 887 S.W.2d 862, 875 (Tex. Crim. App. 1994), *abrogated on other grounds by Hammock v. State*, 46 S.W.3d 889 (Tex. Crim. App. 2001)). "As a question of fact, appellant must settle the question of a translation's accuracy at trial by impeaching the translation; cross-examination of the witness presents the most convenient vehicle." *Garcia*, 887 S.W.2d at 875. Appellant had the opportunity to impeach Garcia's translation at trial, and it would be improper for us to make our own determination as to the accuracy of Garcia's translation.

Because Appellant could have introduced a translation of Appellant's videotaped interrogation and because Appellant was able to cross-examine Garcia on the accuracy of her translation, the trial court did not abuse its discretion in denying Appellant's motion to suppress and admitting the videotaped interrogation into evidence. We overrule Appellant's sole issue.

### This Court's Ruling

We affirm the judgment of the trial court.

JOHN M. BAILEY
CHIEF JUSTICE

March 20, 2025

Publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.