

# In the
# Court of Appeals
# Sixth Appellate District of Texas at Texarkana

_____

No. 06-24-00194-CR

_____


PAUL LUIS PELAEZ, Appellant

V.

THE STATE OF TEXAS, Appellee


On Appeal from the 462nd District Court
Denton County, Texas
Trial Court No. F22-3772-462


Before Stevens, C.J., van Cleef and Rambin, JJ.
Memorandum Opinion by Chief Justice Stevens

MEMORANDUM OPINION

A Denton County jury found Appellant, Paul Luis Pelaez, guilty of three counts of possession of child pornography and sentenced him to eight years' incarceration.[1,2]  *See* TEX. PENAL CODE ANN. § 43.26.  Pelaez appeals his convictions, arguing that (1) the State failed to prove his possession was intentional or knowing, (2) the trial court erred by admitting extraneous-offense evidence, and (3) the trial court erred in admitting a "Spanish recording of Appellant's interrogation without a contemporaneous translation by a certified licensed court interpreter."  Because we find that a rational jury could conclude that the State met its burden to prove beyond a reasonable doubt that Pelaez intentionally or knowingly possessed child pornography and because we hold that the trial court did not err in admitting the complained-of evidence, we affirm the trial court's judgment.

## I.     Evidence at Trial

Dallas Police Department (DPD) Detective Krystal Woods-Romero received a CyberTip from the National Center for Missing and Exploited Children (NCMEC) for a Google account concerning child pornography being shared.  The CyberTip contained 113 images flagged as possible child pornography.  After confirming the account holder's e-mail address and IP address, Romero subpoenaed Spectrum, an internet service provider, to obtain the physical

---

[1]In companion cause number 06-24-00198-CR, Pelaez challenges his convictions of three counts of child pornography.  In companion cause number 06-24-00199-CR, Pelaez challenges his convictions of four counts of child pornography.  *See* TEX. PENAL CODE ANN. § 43.26 (Supp.).

[2]This appeal was transferred to this Court from the Second Court of Appeals pursuant to a Texas Supreme Court docket equalization order.  *See* TEX. GOV'T CODE ANN. § 73.001 (Supp.).  Accordingly, we apply the precedent of the Second Court of Appeals in deciding this case to the extent that it conflicts with our own.  *See* TEX. R. APP. P. 41.3.

address associated with the IP address. The address that came back was the apartment of Pelaez. Romero then got a search warrant for Pelaez's Google account, which contained additional information confirming the account in the CyberTip belonged to Pelaez. The information received from Google also contained over 350 files depicting child pornography that had been saved to the account over a period of months. After the CyberTip, Spectrum subpoena information, and Google return, Romero obtained a search warrant for Pelaez's apartment and electronic devices. When the search warrant was executed, Romero, along with DPD Detective Sergio Longoria, interviewed Pelaez. Romero explained that Pelaez was primarily a Spanish speaker and that, because she did not fluently speak Spanish, Longoria acted as their interpreter for the interview. Romero testified that Pelaez was not under arrest at that time and was free to end the interview, as he was not being detained.

Longoria, who testified that his first language is Spanish, acted as both an investigator and an interpreter in interviewing Pelaez. Longoria stated that Pelaez engaged in the interview in a calm manner and agreed to speak with the detectives. Longoria testified that Pelaez indicated he was able to understand Longoria and the conversation they were having. Pelaez was informed that he was not under arrest and that it was Pelaez's choice to speak with the detectives. Pelaez was the first one to mention child pornography, explaining his understanding that it is illegal, prior to being told what the detectives were investigating. Pelaez also explained to the detectives that the child pornography was automatically "uploaded" onto his device from a group messaging service that he was a part of for the exchange of adult pornography. In the interview, Pelaez acknowledged that he understood it is illegal to look at those images, but he informed the

3

detectives that he did not always have the immediate opportunity to delete the images when they were uploaded from the group messages. Longoria stated that Pelaez acknowledged that he accessed and watched child pornography. Longoria testified that he directly asked Pelaez, "[W]hy are you saving these child pornography videos and images on your phone," and that Pelaez stated he did that in the past. On cross-examination, Longoria agreed that his interpretation of the interview was not verbatim but was more conversational. Longoria was confident that he and Pelaez understood each other during the interview and were clear when talking about child pornography.

Manuel Murillo, a master licensed court interpreter, explained that his opinion of Longoria's interpretation was "mediocre at best." Murillo stated that there were concerns over "the translation of the terms save, download, and upload," which he believed led to confusion during the interview as the terms have different meanings in the context of this matter. Murillo noted that "there was a lot of . . . paraphrasing" and that the discussion of both adult and child pornography could have caused confusion during the interview. Murillo disagreed with many portions of Longoria's interpretations, stating that Pelaez often talked about the recordings being automatically uploaded to his phone from the group messages, but Longoria's interpretation was that they were downloaded by Pelaez. Murillo agreed that Pelaez was aware the recordings depicting child pornography were uploaded to his phone at times from the group messages but stated that Pelaez would try to delete them when he had time. Murillo also agreed that Pelaez stated he knew that watching the recordings of the children was wrong.

4

DPD Detective Michael Fontenot, who works in the Internet Crimes Against Children (ICAC) squad, performed the extraction on Pelaez's seized cell phones wherein "the data from the cell phone" was collected. Fontenot extracted over 4,000 images of possible child-abuse content from one of Pelaez's phones, or what Fontenot referred to as the "active" phone. The State introduced extraneous-offense evidence consisting of two screenshot still images from recordings located in Pelaez's Google Drive account and two screenshot still images from recordings located in the "active" cell phone, which were admitted into evidence. Within Pelaez's Google Drive, there was a folder titled "Google Fotos." In opening the folder, DPD Detective James Goetz, who works in the ICAC squad, explained that the following subfolders were discovered: Cortita Eroticas Videos → HOMEMADE → Chiquillades → Mi niñooo. In opening the "Mi niñooo" folder, there were recordings and image files that indicated they were saved from the group messages that Pelaez was a part of. The State admitted screenshot still images from the recording, which clearly depicted child pornography. Given the organization of the folders and the manual nature of creating the folders, Goetz opined that the user of the Google Drive intentionally created those folders and was aware of the nature of the saved recordings and images. Goetz acknowledged that the indicted images were those sent from the CyberTip, which came from Pelaez's Google Photos, not his Google Drive. Romero agreed that the extracted information from the cell phones revealed in excess of 40,000 files of adult pornography, "[a] lot more" than the files containing child pornography.

Romero obtained an arrest warrant based on the interview of Pelaez and the information gathered from the seized cell phones.

5

## II.    Legally Sufficient Evidence Supports the Jury's Verdict

In his first issue, Pelaez asserts that the State failed to meet its burden of proof to establish that his possession of child pornography was intentional or knowing. He does not dispute his possession but solely argues that the State did not prove the requisite mens rea to support his conviction.

"In our due-process review of the sufficiency of the evidence to support a conviction, we view all of the evidence in the light most favorable to the prosecution to determine whether any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jones v. State*, 343 S.W.3d 550, 552 (Tex. App.—Fort Worth 2011, no pet.) (op. on remand) (citing *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)); *see Brooks v. State*, 323 S.W.3d 893, 912 (Tex. Crim. App. 2010) (plurality op.). "We examine legal sufficiency under the direction of the *Brooks* opinion, while giving deference to the responsibility of the jury 'to fairly resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts.'" *Williamson v. State*, 589 S.W.3d 292, 297 (Tex. App.—Texarkana 2019, pet. ref'd) (quoting *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007)).

We measure the evidence "by the elements of the offense as defined by the hypothetically correct jury charge for the case." *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). "This familiar standard 'recognizes the trier of fact's role as the sole judge of the weight and credibility of the evidence after drawing reasonable inferences from the evidence.'" *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018) (quoting *Adames v. State*, 353 S.W.3d 854, 860 (Tex. Crim. App. 2011)). We presume that the fact-finder resolved any conflicting

inferences in favor of the verdict, and we defer to that resolution. *See Brooks*, 323 S.W.3d at 922 (Cochran, J., concurring). On appeal, we "may not re-evaluate the weight and credibility of the record evidence and thereby substitute our [own] judgment for that of the fact-finder." *Williams v. State*, 235 S.W.3d 742, 750 (Tex. Crim. App. 2007) (quoting *Dewberry v. State*, 4 S.W.3d 735, 740 (Tex. Crim. App. 1999)).

The evidence-sufficiency standard of review is the same for both direct and circumstantial evidence. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007). "For the evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt." *Wise v. State*, 364 S.W.3d 900, 903 (Tex. Crim. App. 2012). Rather, a court considers only whether the inferences necessary to establish guilt are reasonable based upon the "cumulative force of all the evidence" when considered "in the light most favorable to the verdict." *Hooper*, 214 S.W.3d at 16–17.

A person commits possession of child pornography if he "knowingly or intentionally possesses . . . visual material that visually depicts a child younger than 18 years of age at the time the image of the child was made who is engaging in sexual conduct," and he "knows that the material depicts the child" in this manner. TEX. PENAL CODE ANN. § 43.26(a). "A person acts intentionally, or with intent, with respect to the nature of his conduct or to a result of his conduct when it is his conscious objective or desire to engage in the conduct or cause the result." TEX. PENAL CODE ANN. § 6.03(a). "A person acts knowingly, or with knowledge, with respect to the nature of his conduct or to circumstances when he is aware of the nature of his conduct or that the circumstances exist." TEX. PENAL CODE ANN. § 6.03(b).

7

Sufficient evidence to support a jury's determination that the defendant had knowledge of the images of child pornography on his computer may [commonly] include evidence that: (1) the images of child pornography were found in different computer files, showing the images were copied or moved; (2) the images of child pornography were found on an external hard drive or CD, which indicates the images were deliberately saved on the external devices; (3) the images stored on the computer and the external hard drive were stored in similarly named folders; (4) the names of the folders containing the images of child pornography necessarily were assigned by the person saving the file; or (5) the recovery of numerous images of child pornography were recovered from the defendant's computer.

*Ballard v. State*, 537 S.W.3d 517, 523 (Tex. App.—Houston [1st Dist.] 2017, pet. ref'd).

The evidence establishes that child pornography was located within Pelaez's possession on two of his cell phones. He does not contest this. Pelaez put forth a defensive theory that his possession of the indicted child pornography was not intentional or knowing. Even so, the evidence established that Pelaez was aware that his cell phone contained child pornography but that he had intended to delete it. There were images that were automatically uploaded from the pornography group chats that Pelaez participated in; however, Pelaez acknowledged that he was aware there were images and recordings depicting child pornography from the group chat, thus acknowledging their existence on his devices. Furthermore, the evidence shows that Pelaez had a Google Drive account in his own name that contained folders specifically named "Mi niñooo." Goetz testified that Google Drive folders are manually created by a user, not automatically created.

The evidence in this case permitted the fact-finder to reasonably determine that Pelaez knowingly possessed the images for which he was convicted. The jury heard Pelaez's argument that the possession was not knowing or intentional—and did not conclude that the defensive

8

evidence gave rise to reasonable doubt. We are bound to defer to that determination on appeal. *See Murray v. State*, 457 S.W.3d 446, 448–49 (Tex. Crim. App. 2015). Moreover, "[t]he State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt" in order "[f]or the evidence to be sufficient." *Wise*, 364 S.W.3d at 903. Taken collectively, the fact-finder could have determined that the evidence in this case showed that Pelaez was in knowing possession of child pornography. Thus, based on the cumulative force of all the evidence, the jury could have rationally found Pelaez guilty beyond a reasonable doubt. As a result, we overrule Pelaez's first issue.

## III. The Extraneous-Offense Evidence Was Admissible

In his second issue, Pelaez asserts that the trial court erred in its admission of the screenshot images from his Google Drive containing child pornography. Specifically, Pelaez contends that "the extreme prejudicial effect of the horrific images outweighed any probative value of the images."

"The standard of review for a trial court's rulings under the Rules of Evidence is abuse of discretion." *Sauceda v. State*, 129 S.W.3d 116, 120 (Tex. Crim. App. 2004). "If the ruling was correct on any theory of law applicable to the case, in light of what was before the trial court at the time the ruling was made, then we must uphold the judgment." *Id.* "A trial court abuses its discretion when its decision is so clearly wrong as to lie outside that zone within which reasonable persons might disagree." *McDonald v. State*, 179 S.W.3d 571, 576 (Tex. Crim. App. 2005) (citing *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)). "Trial courts are afforded broad discretion in their evidentiary rulings because they are usually in

9

the best position to determine whether certain evidence should be admitted or excluded." *Lewis v. State*, No. 05-23-00995-CR, 2025 WL 1436062, at *5 (Tex. App.—Dallas May 19, 2025, no pet. h.) (mem. op., not designated for publication) (citing *Guzman v. State*, 955 S.W.2d 85, 89 (Tex. Crim. App. 1997)).

Evidence of extraneous crimes, wrongs, or other acts is not admissible at the guilt-innocence phase of a trial to prove that a defendant committed the charged offense in conformity with bad character. *See* TEX. R. EVID. 404(b)(1); *Devoe v. State*, 354 S.W.3d 457, 469 (Tex. Crim. App. 2011); *Moses v. State*, 105 S.W.3d 622, 626 (Tex. Crim. App. 2003). That said, evidence of extraneous crimes, wrongs, or other acts may be admissible when it has "relevance apart from character conformity." *Moses*, 105 S.W.3d at 626. For example, such "evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." TEX. R. EVID. 404(b)(2). As a result, "[e]xtraneous offense evidence that logically serves any of these purposes is 'relevant' *beyond* its tendency to 'prove the character of a person to show that he acted in conformity therewith.'" *Montgomery v. State*, 810 S.W.2d 372, 387 (Tex. Crim. App. 1991) (op. on reh'g). "'Rule 404(b) is a rule of inclusion rather than exclusion.' The rule excludes only that evidence that is offered (or will be used) solely for the purpose of proving bad character and hence conduct in conformity with that bad character." *Gutierrez v. State*, 630 S.W.3d 270, 283 (Tex. App.—Eastland 2020, pet. ref'd) (quoting *De La Paz v. State*, 279 S.W.3d 336, 343 (Tex. Crim. App. 2009) (quoting *United States v. Bowie*, 232 F.3d 923, 929 (D.C. Cir. 2000))).

It is the "appellant's burden to overcome this presumption" and to "demonstrate[e] that the probative value of the evidence is substantially outweighed by the danger of unfair prejudice" or of misleading the jury. *Anderson v. State*, Nos. 05-18-01303-CR & 05-18-01304-CR, 2020 WL 219310, at \*4 (Tex. App.—Dallas Jan. 15, 2020, no pet.) (mem. op., not designated for publication).

Here, the State argues that the evidence was admissible to prove the absence of mistake and to make the defensive theory of mistake less probable. Pelaez contends that the admission of the extraneous-offense images did not establish intent any more so than the indicted images would have. However, the State argues that it was not merely the images it was offering but, rather, the capacity in which the selected images were stored within Pelaez's Google Drive. The record here, as well as Pelaez's arguments on appeal, demonstrate that the defense strategy was not to rebut the actual possession of the child pornography but rather to undermine the mens rea, specifically that Pelaez did not knowingly or intentionally possess the child pornography. Thus, Pelaez's intent was a central issue in this case. Accordingly, the evidence showing the manual labeling and storage of the child pornography within Pelaez's Google Drive account served to rebut the defensive strategy and were relevant and presumed admissible. *See De La Paz v. State*, 279 S.W.3d 336, 345 (Tex. Crim. App. 2009). As a result, we find that the trial court's ruling admitting the screenshot images was within the zone of reasonable disagreement and was not an abuse of discretion. We, therefore, overrule Pelaez's second issue.

11

**IV.   The Recording of the Interrogation Was Admissible**

By his third and final issue, Pelaez argues that the trial court erred in admitting footage of the "Spanish interrogation without a contemporaneous translation by a certified licensed interpreter" because it denied his right to "provide the jury a complete and accurate translation and it denied him the safeguards enacted by the Texas Code of Criminal Procedure [Article] 38.30." Prior to trial, Pelaez filed a motion to suppress the recording, and the trial court held a hearing. Ultimately, the trial court denied his motion and ruled that the interview was admissible.

"In reviewing a trial court's ruling on a motion to suppress, we apply a bifurcated standard of review . . . ." *State v. Heath*, 696 S.W.3d 677, 689 (Tex. Crim. App. 2024). Such review "gives almost total deference to the trial court's determination of historical facts that the record supports and consider[s] *de novo* the application of the law to the facts." *Id.* "We review a trial court's ruling on the admissibility of evidence under an abuse of discretion standard, and we must uphold the trial court's ruling if it was within the zone of reasonable disagreement." *Wells v. State*, 611 S.W.3d 396, 427 (Tex. Crim. App. 2020).

Article 38.30(a) states, in pertinent part,

> In any criminal proceeding, when a motion for appointment of an interpreter is filed by any party or on motion of the court and if the court determines that a person charged or a witness does not understand and speak the English language, an interpreter must be appointed as provided by Section 57.002, Government Code, and sworn to interpret for the person charged or the witness.

Tex. Code Crim. Proc. Ann. art. 38.30(a).

12

"The [Texas] Court of Criminal Appeals has previously indicated that the right to a sworn and qualified interpreter is a trial right designed to ensure that a defendant can understand and participate in the proceedings in a meaningful way." *Vallejo Nunez v. State*, 709 S.W.3d 23, 29 (Tex. App.—Eastland 2025, no pet.) (citing *Linton v. State*, 275 S.W.3d 493, 500–01 & n.13 (Tex. Crim. App. 2009)); *see Gonzalez v. State*, No. 03-21-00104-CR, 2023 WL 3873493, at *10 (Tex. App.—Austin June 8, 2023, no pet.) (mem. op., not designated for publication).

Pelaez relies on *Leal v. State* to support his contention that a reliable, accurate translation of the Spanish interview should have been admitted on the record. *See Leal v. State*, 782 S.W.2d 844, 849 (Tex. Crim. App. 1989). In *Leal*, a cooperating co-defendant had a conversation with an appellant while wearing a concealed microphone. *Id.* at 847. The conversation "was mostly in Spanish." *Id.* It was recorded and later admitted into evidence during the trial. *Id.* The jury was allowed to listen to the recording while reviewing a verbatim transcript of the conversation. *Id.* The jury was then allowed to hear the recording for a second time "with the assistance of an English transcript prepared by the prosecution." *Id.* Nothing in the record indicated who prepared the translation. *Id.* Also, "No one was sworn in by the trial court as an interpreter." *Id.* at n.4.

The context of *Leal* as compared to the facts before us have been recently considered by our sister court in *Vallejo Nunez*, which we find persuasive.

> In *Leal*, defense counsel did not object to the admissibility of the tape recording. Instead, he only requested that there be an accurate and sworn-to translation of the tape recording admitted at trial. *Leal*, 782 S.W.2d at 848. Here, Appellant's trial counsel made no request for the appointment of an interpreter, as required by Article 38.30, and instead only sought to suppress the entirety of the videotaped interrogation based on the "unreliability" of Garcia's translation. If Appellant's

13

trial counsel wanted to present a translation to the jury that he claims would have been "accurate," he should have requested the opportunity to do so. *See Castrejon v. State*, 428 S.W.3d 179, 185 (Tex. App.—Houston [1st Dist.] 2014, no pet.) ("Upon learning that the State intended to offer the recording into evidence, defense counsel could have requested that the trial court appoint an interpreter to translate the Spanish part of the recording into English and that it grant extra time for the translation to be made.").

*Vallejo Nunez*, 709 S.W.3d at 29.

Here, as in *Vallejo Nunez*, the defense sought to suppress the recording due to what it considered an inaccurate translation by Longoria. Specifically, Palaez argued,

Our objection to the video was twofold. The initial suppression issue based on the voluntariness of the statement and the issue of admitting that tape into evidence and assuming, presumably, publishing it to the jury without a translation. The State can do the translation one of two ways, either with a sworn written transcription, transcribed, or through contemporaneous translation. . . .

. . . .

. . . . And as the interpreting officer yesterday testified, he was paraphrasing, he is untrained. And the translation of scientific or computer terms, we would object to this being admitted and played without either the full transcription or contemporaneous translation.

Pelaez's challenge to the accuracy of Longoria's "translation was a fact question for the jury to determine." *Id.* at 30 (citing *Calixto v. State*, 66 S.W.3d 505, 510 (Tex. App.—Austin 2001, pet. ref'd); *Garcia v. State*, 887 S.W.2d 862, 875 (Tex. Crim. App. 1994), *abrogated on other grounds by Hammock v. State*, 46 S.W.3d 889 (Tex. Crim. App. 2001)). "As a question of fact, appellant must settle the question of a translation's accuracy at trial by impeaching the translation; cross-examination of the witness presents the most convenient vehicle." *Id.* (quoting *Garcia*, 887 S.W.2d at 875).

Pelaez had the opportunity to impeach Longoria's translation at trial, and it would be improper for us to make our own determination as to the accuracy of Longoria's translation. Furthermore, Murillo, who also testified at trial, testified at the hearing on behalf of the defense. Much like his testimony before the jury, Murillo stated that he identified several issues with the interpretation provided by Longoria during the pre-arrest interview of Pelaez. Murillo also explained that Pelaez, who had some familiarity with English, was able to understand and cooperate in the interview. Presenting Murillo afforded Pelaez another opportunity to discredit the accuracy of Longoria's translation. *See id.*

Because Pelaez could have introduced a translation of the recorded interview and because he was able to cross-examine Longoria on the accuracy of his translation, the trial court did not abuse its discretion in denying Pelaez's motion to suppress and admitting the recorded interview into evidence. *See id.* As a result, we overrule Pelaez's third issue.

## V.	Conclusion

We affirm the trial court's judgment.

Scott E. Stevens
Chief Justice

Date Submitted:	May 29, 2025
Date Decided:	July 17, 2025

Do Not Publish

15